[S. F. No. 335.    Department Two.—December 18, 1896.]

## JOHN W. TURNER, Respondent, *v.* WILLIAM R. HEARST, Appellant.

Appeal—Bill of Exceptions—Settlement—Acts of Different Judges.—Where different judges act during the progress of a cause, it is the duty of the litigant desiring to have a ruling or decision reviewed upon appeal, to present a bill of exceptions embodying the matters excepted to before one of the judges to the judge who made the ruling or decision for settlement by him, either at the time of the ruling, or after judgment; and, in such case, two or more bills of exceptions may be settled and properly presented for consideration upon appeal.

Id.—Review of Order Striking Out Parts of Answer. — An order made by one judge striking out parts of an answer cannot be reviewed on appeal if the exception thereto, instead of being settled by the judge who made the ruling, is settled by another judge who tried the cause.

Libel—False Publication against Attorney—Evidence—Standing of Attorney—Extent of Practice—Damages.—In an action for a publication which is libelous *per se*, affecting the standing of an attorney in his profession, his position and standing in society and the nature and extent of his professional practice may be proved and properly considered by the jury in estimating the general damages to which the plaintiff is entitled.

Id.—Mental Suffering of Plaintiff—Evidence—Statements of Third Persons.—The mental suffering of the plaintiff is an element of general damages in an action for libel; but only the suffering which plaintiff naturally experiences as the direct, immediate, and proximate effect upon his mind and feelings of the libel, can be considered; and plaintiff cannot be permitted to prove what third persons have said about the publication for the purpose of showing increased mental suffering induced by their statements.

Id.—Understanding of Third Persons' as to Person Libeled — Issue Stricken Out—Estoppel of Plaintiff.—Where an issue has been stricken from the answer on motion of plaintiff as to whether the libelous words were understood by third persons to refer to the plaintiff, the statements of third persons cannot be offered in evidence by the plaintiff to prove that the libelous words were so understood.

Id.—Mistake in Name — Competency of Reporter — Inadmissible Evidence of Subsequent Discharge.—Where the defendant had fully proved the competency of the reporter who had mistakenly substituted the name of plaintiff for that of another person, in a libelous report furnished by him for publication, it is not admissible for plaintiff to prove the subsequent discharge of the reporter in disproof of his competency.

Id.—Evidence of Malice — Circumstances of Publication — Correct Report taken from Another Paper — Failure to Verify—Question for Jury.—It is a general rule that the publication and all the circumstances attending and surrounding it, may be given in evidence upon the question of malice; and it may be shown that the defendant in publishing the article relied entirely upon the publication in another

paper, and did not verify the report of that paper, as evidence touching the question of negligence or careless disregard of the rights of the plaintiff, notwithstanding the fact that the article published in such other paper was correct; and whether or not the method adopted by the defendant amounted to such disregard is matter for the jury under proper instruction by the court.

ID.—MITIGATION OF DAMAGES — RETRACTION OF LIBEL AFTER COMMENCEMENT OF ACTION.—An apology or retraction of the libelous charge may be proved in mitigation of damages, though made after the commencement of the action; and when such apology or retraction is fully, promptly, and adequately made, and is such as an impartial person would consider reasonable and satisfactory under the circumstances of the particular case, it tends to decrease the amount of damages which, without it, the plaintiff would have sustained, and affords evidence upon the subject of express malice, the presence of which alone justifies punitive damages.

ID.—DUTY OF RETRACTION—ERRONEOUS INSTRUCTION.—There is no legal duty resting upon one who has made a libelous publication to publish an apology and retraction thereof, and it is erroneous to instruct the jury that such legal duty rests upon the defendant charged with libel, it being merely the right of the defendant to publish a retraction, and to have proof of that publication presented to the jury in mitigation of damages.

ID.—ADEQUACY OF RETRACTION — INSTRUCTION — QUESTION OF FACT. — Where the defendant seeks to prove the publication of an adequate retraction in mitigation of damages, it is proper for the court to instruct the jury that to avail him it should appear that it was fully, fairly, and promptly made, and is such as an impartial person would consider reasonable and satisfactory under the circumstances; and, in such case, the question of the sufficiency or insufficiency of the retraction is peculiarly one of fact for the determination of the jury.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. WM. R. DAINGERFIELD, Judge.

The facts are stated in the opinion of the court.

*Garret W. McEnerney*, for Appellant.

The court erred in permitting plaintiff to testify to remarks made by third persons to plaintiff or in his hearing in relation to the publication (*Burt* v. *Advertiser etc. Co.*, 154 Mass. 238–47; *Prime* v. *Eastwood*, 45 Iowa, 640), and in permitting defendant to prove that subsequent to the publication of the complaint, the reporter who wrote the article, left the *Examiner*.

(*Childers* v. *San Jose Mercury etc. Co.*, 105 Cal. 284; 45 Am. St. Rep. 40; *Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 62.) In any event defendant was not responsible in punitive damages, and the jury should have been so instructed. (*Lakeshore etc. Ry. Co.* v. *Prentice*, 147 U. S. 101.) The jury should not have been instructed that they were entitled to take into consideration the fact that defendant, after the action was commenced, made a conditional offer of correction. (*Sappenfield* v. *Main Street etc. R. R. Co., supra.*)

*Clement, Cannon, Kline & Stradley*, for Respondent.

If it was error to strike out any portion of the answer, it cannot be reviewed by the supreme court because the bill of exceptions was not settled by the judge who made the ruling. (*Cummings* v. *Conlan*, 66 Cal. 403; *Tregambo* v. *Comanche etc. Co.*, 57 Cal. 501.) In determining damages, the jury may take into consideration the condition of life of the plaintiff. (13 Am. & Eng. Ency. of Law, 432, and cases cited.) Plaintiff is allowed to testify as to how the publication was called to his attention, and what remarks were made to him concerning it for the purpose of showing mental suffering. (*Taylor* v. *Hearst*, 107 Cal. 269; Townsend on Slander and Libel, par. 390; *Rice* v. *Cottrel*, 5 R. I. 340; *Hotchkiss* v. *Lothrop*, 1 Johns. 286.) The conditional offer of defendant to publish a retraction was a fact tending to show the condition of defendant's mind with reference to plaintiff at the time of the publication. (13 Am. & Eng. Ency. of Law, 431; *Pearson* v. *Lemaitre*, 5 Man. & G. 700; *Mead* v. *Daubigny*, Peake, 168; *Bolton* v. *O'Brien*, 16 L. R. Ir. 97; Odgers on Libel and Slander, 276.) Evidence of an article libelous *per se* establishes a *prima facie* case of malice in fact, and the introduction by defendant of evidence, to rebut this presumption, raised an issue for the jury, not the court to pass upon. (*Childers* v. *San Jose Mercury etc. Co.*, 105 Cal. 289; 45 Am. St. Rep. 40; *Taylor* v. *Hearst*, 107 Cal. 271.) The defendant is as responsible for the publication, even though

he had no knowledge of it, as he would have been had he done it personally. (*Taylor* v. *Hearst, supra; McAllister* v. *Detroit Free Press Co.*, 15 Am. St. Rep. 332; *Upton* v. *Hume*, 24 Or. 420; 41 Am. St. Rep. 863.)

HENSHAW, J.—Appeals from the judgment and from the order denying defendant a new trial.

The action was for damages for libel. Defendant in his newspaper, the San Francisco *Examiner*, on the seventh day of December, 1893, published what purported to be an account of difficulties existing between Lotta, an actress, and Turner, the plaintiff. In this account it was stated that Lotta had caused Turner's arrest upon a criminal charge, and that "the case was compromised, together with the settlement of several thousand dollars in notes, given by the Plumas county lawyer to the actress."

On the trial it appeared, and was undisputed, that the article in question was printed and published in the *Examiner*. It further appeared that the matters in the article set forth were true, saving that the charges by Lotta were directed against one John H. Thomas, and not against John W. Turner; that Turner was entirely innocent of any wrongdoing, and had in fact been the legal adviser of Lotta in her troubles with the said Thomas.

The error in the *Examiner's* publication occurred in the following manner: The issue of the San Francisco *Post* of the day preceeding the *Examiner* publication, had contained an accurate statement of the facts. In this it was announced that John W. Turner had commenced an action against Lotta to recover moneys due for legal services rendered by him as her attorney in certain litigation which Lotta had with John H. Thomas, and in the narration of the causes which led to the litigation it was stated that Lotta had made serious charges against Thomas to the effect that he had swindled her by false and fraudulent pretenses, and later had caused the arrest of Thomas in New York upon a criminal charge.

The city editor of the *Examiner* gave to one of his reporters the article from the *Evening Post*, with instructions to "boil it down" for publication in the next issue. The reporter, in doing this late at night, and under a press of work, mistook the name John W. Turner for John H. Thomas, and made it appear, and it was so published, that the wrongful acts and criminal offenses mentioned had been committed by this plaintiff.

Defendant, for answer, and by way of extenuation and mitigation, pleaded these facts, and pleaded also a reparation and apology, published in the paper upon the fourth day of February, 1894, in which a correct version of the matter was given, and the account closed with the following: "It will thus be seen that we have unintentionally done Mr. Turner a great injustice, but one which is likely to happen with the most carefully guarded attention to the news columns of a busy morning paper. Such mistakes are always to be regretted, as is this, and call for ample and prompt explanations, which we are always prepared to make. In this case we should have been pleased to have set the matter—Mr. Turner and our own mistake—right at an earlier day had the matter been sooner called to our attention."

Certain denials of the answer were, upon plaintiff's motion, stricken out. The ruling and decision on motion to strike out were made by the Hon. C. W. Slack. The trial was had before the Hon. W. R. Daingerfield. The bill of exceptions on appeal from the judgment, which was also the statement used upon motion for a new trial, was presented to and settled by Judge Daingerfield. Objection is here made to reviewing the order of Judge Slack in striking out portions of the defendant's answer, upon the ground that the bill containing the exception to this ruling and decision should have been presented to and settled by Judge Slack, who made the order.

The objection is well taken. It is the duty of a litigant desiring to have a ruling or decision reviewed to

present the bill of exceptions, embodying the matters excepted to, to the judge who made the ruling or decision for settlement by him. (*Cummings* v. *Conlan,* 66 Cal. 403.) That judge alone can know the facts upon which he exercised his judgment, and, therefore, he alone, under our system, can properly settle the bill. Appellant could have presented his bill of exceptions to Judge Slack, either at the time of the ruling (Code Civ. Proc., sec. 649), or after the judgment (Code Civ. Proc., sec. 650; *Tregambo* v. *Comanche etc. Co.,* 57 Cal. 501); but, whichever course he elected to pursue, it was still the judge who made the ruling who should have settled the bill. Under such circumstances, appellant may have two or more bills settled and properly presented for the consideration of this court.

It was not error for the court to allow proof of the extent of plaintiff's practice. Plaintiff was a lawyer engaged in the practice of his profession. The words of the publication being admittedly libelous *per se,* and affecting plaintiff's standing in his profession, it was proper for the jury, in estimating the general damages to which plaintiff was thus entitled, to know his position and standing in society, and the nature and extent of his professional practice. General damages, in an action where the words are libelous *per se,* are such as compensate for the natural and probable consequences of the libel, and certainly a natural and probable consequence of such a charge against a lawyer would be to injure him in his professional standing and practice

It is the rule in this state that mental suffering is an element of general damages in an action for libel (*Childers* v. *San Jose Mercury etc. Co.,* 105 Cal. 284; 45 Am. St. Rep. 40; *Taylor* v. *Hearst,* 107 Cal. 262); but the mental suffering is the suffering which plaintiff naturally experiences as the direct, immediate, and proximate effect upon his mind and feelings of the libel. In the case at bar plaintiff was allowed over objection to give evidence of what clients had said to him about the publication, and what the reporters of the papers in Eureka,

Humboldt county, had said to him about the publication, and what persons on the street said about it. He testified that he heard a remark "that, if that was the kind of a man I was, I would n't get much business in Eureka"; and another remark to the effect that, "Unquestionably it must be true, or the *Examiner* would not have risked such a publication." Respondent contends that this evidence was admissible: 1. To show the mental suffering of the plaintiff; or, 2. To show that the libelous words were understood by those who read them to refer to the plaintiff. But upon the first proposition it is well settled that the damages must be the direct result of the defendant's libel, and not of any mere repetition of it by others. It is a safe rule to declare that the compensation for injury to feelings should be limited to the natural effect of the libelous publication, as it comes to the knowledge of the plaintiff. It would be pernicious to permit evidence of this kind for the purpose of showing increased suffering. The evidence itself could not be met. There would be no way of testing the sincerity of the remarks, or of determining whether they were prompted in fact by the publication, or sprang from secret hostility or malice toward the plaintiff, in which case the aggravation to plaintiff's feelings would in no sense be chargeable upon defendant. As is said in *Burt* v. *Advertiser Newspaper Co.*, 154 Mass. 238: "Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual."

Upon the second proposition, that the evidence was admissible to prove that the libel was understood to refer to plaintiff, it is sufficient to point out that there was no issue of this nature in the pleadings. That portion of defendant's answer seeking to join such issue had been eliminated, and, for reasons above given, the order is not here subject to review. Plaintiff cannot be al-

lowed to have an issue raised by a pleading stricken out upon his own motion, and then justify the admission of evidence upon the ground that it is addressed to such an issue.

Defendant made proof of the competency of the reporter who committed the error, so full and satisfactory, that further evidence upon the point was stopped by the court. To offset this, evidence was admitted on behalf of plaintiff to show why and when the reporter had left defendant's employment. Defendant having proved that he was not negligent nor careless of the rights of others in the employment of the reporter, evidence of his discharge from employment, subsequent to the libelous publication, was erroneously admitted. It was in its nature similar to proof of precaution taken after an accident. (*Sappenfield* v. *Main Street etc. R. R. Co.*, 91 Cal. 62.) The evidence could only have been admitted in disproof of his competency. It cannot be said that it worked defendant no injury.

As going to the question of malice, it is a general rule that the publication, and all the circumstances attending and surrounding it, may be given in evidence. It was, therefore, not error for the court to permit plaintiff to prove that the defendant in publishing the article relied entirely upon the publication in the *Evening Post* for his information, and did not verify the *Post* report. It would be evidence touching the question of negligence, or of careless disregard of the rights of others, notwithstanding the fact that, in this instance, the article published in the *Post* was correct. Gross negligence or carelessness of the rights of others is frequently equivalent in law to an intentional or malicious disregard of those rights. Whether or not the method adopted by the *Examiner* amounted to such disregard was a matter for the jury under proper instruction by the court.

Defendant, after the commencement of the suit, made an offer to plaintiff to publish a retraction and apology, but this offer was conditioned upon a dismissal by plaintiff of his suit. Plaintiff having refused the offer, de-

CXV. CAL.—26

fendant, in the next Sunday edition of his paper, four days thereafter, published the retraction above quoted.

This retraction having been published after action commenced, the court was inclined to hold upon the trial that proof of it was not admissible in evidence. Finally, however, counsel stipulated that it might be admitted and considered by the jury, and it was admitted, as well as the rebutting evidence of plaintiff concerning the conditional offer of publication above adverted to.

In some jurisdictions exemplary damages for libel are not permitted, and the recovery is strictly limited to compensatory damages. In some states statute law has provided that a defendant who has made a retraction before the commencement of the action, or as soon thereafter as may be, may plead and prove the same in mitigation of damages. Such is the general effect of Lord Campbell's Act. (Stats. 6 and 7 Vict. 235.)

In the absence of any statutory provision upon the question some courts have held that a public apology or retraction, made after the commencement of the action, cannot be proved in mitigation of damages; but the better and more liberal rule we take to be the one declared in Newell on Defamation, Slander, and Libel, section 84, that, aside from statutes, a defendant may give evidence of an apology or a retraction, in mitigation of damages, even though such apology or retraction was not made at the earliest opportunity after the commencement of the action. (*Smith* v. *Harrison*, 1 Fost. & F. 565.) A tardy or reluctant or half-hearted withdrawal, or one which seems to have been made rather to escape liability than to repair the wrong, will avail a defendant little. Upon the other hand, when it is fully, promptly, and adequately made, it undoubtedly tends to decrease the amount of damages which, without it, plaintiff would have sustained, and must afford evidence upon the question of express malice, the presence of which alone justifies punitive damages.

Appellant complains of certain instructions given by

the court upon the question of apology and retraction. One of these instructions is as follows: "When a newspaper is led into publishing unknowingly an untrue statement concerning an individual, it should not only retract when the truth is made known, but compensate the injured party for the injury already done. On being informed that the publication is false, the proprietors ought to publish a retraction promptly, fully, and sincerely, if the publication is false, and ought to give as much prominence and publicity to the retraction as was given to the libelous matter."

Of this instruction appellant says that it lays down to the jury as a proposition of law that it was the duty of defendant to publish a retraction; that no such duty was imposed upon him by law; that defendant was liable for compensatory damages for the publication of the libel, and, if there was express malice at the time of the publication, he was likewise subject to a judgment for punitive damages, but that there is no law for the proposition that any legal duty rested upon him to make a retraction. We think that this instruction, as well as others criticised by appellant, are justly open to complaint. There is unquestionably a moral duty upon every person to repair, so far as he may, the effect of a wrong done, whether that wrong was intentionally or unintentionally committed; but, if it can be said that there was a legal duty imposed upon the defendant to make retraction and apology, it would follow that, in any action for libel where retraction or apology had not been made, plaintiff would be entitled to an instruction to the effect that defendant, in failing to make such retraction, had failed to perform a legal duty. It was defendant's right to publish a retraction, and to have proof of that publication presented to the jury for their consideration in mitigation of damages. The defendant, having availed himself of this, and having sought in mitigation of damages to prove the publication of an adequate retraction, it was proper for the court to instruct the jury that, when a defendant relies upon such

retraction in mitigation of damages, to avail him it should appear that it was fully, fairly, and promptly made, and is such as an impartial person would consider reasonable and satisfactory under the circumstances of the case. The question of the sufficiency or insufficiency is peculiarly a question of fact, and, therefore, peculiarly for the determination of the jury.

The judgment and order are reversed and the cause remanded for a new trial.

Temple, J., and McFarland, J., concurred.