**Joseph L. ALIOTO, Plaintiff-Appellee,**

**v.**

**COWLES COMMUNICATIONS, INC., Defendant-Appellant.**

**No. 77–2999.**

United States Court of Appeals, Ninth Circuit.

July 21, 1980.

---

5. *See supra* note 1.

Don H. Reuben, Reuben & Proctor, Chicago, Ill., argued, for defendant-appellant; Charles W. Kenady, Jr., San Francisco, Cal., on brief.

Lawrence Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiff-appellee.

Before BROWNING and TANG, Circuit Judges, and HOFFMAN,* District Judge.

BROWNING, Circuit Judge:

This is a diversity suit for libel brought by the ex-mayor of San Francisco against the publisher of LOOK Magazine. The suit is based on an article that appeared in LOOK in September 1969 entitled, "The Web that Links San Francisco's Mayor Alioto and the Mafia: A LOOK report on the private Joseph Alioto and his relationships with organized crime." The facts are set out in our previous opinion, 519 F.2d 777 (9th Cir. 1975), and in the most recent opinion of the district court, 430 F.Supp. 1363 (N.D.Cal.1977).

This case has been tried four times. This is the second appeal. In the first trial the jury was unable to reach a verdict. In the second, the jury found the article defamatory and false in one or more particulars, but was unable to decide whether defendant published the article with "actual malice." The trial judge then weighed the evidence himself, concluded that plaintiff had not offered clear and convincing proof of actual malice, and entered judgment n.o.v. for defendant. Plaintiff appealed, contending

---

* Honorable Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

there was sufficient evidence of malice to preclude judgment n.o.v. We agreed and "remanded for a new trial on the sole issue of actual malice." We did not consider the validity of the jury's special finding that the article was defamatory and false in one or more particulars because that finding was not challenged on appeal.

In the third trial, after remand, the jury was again unable to agree on a verdict. The fourth trial was to the court. The trial court found the "Nut Tree" allegations[1] "were made with actual malice, i. e., with reckless disregard for their truth," 430 F.Supp. at 1371, and awarded plaintiff general damages in the sum of $350,000.

Defendant makes four contentions: (1) the judgment at the fourth trial was the product of prejudicial error committed in the second trial; (2) defendant was denied the right to a determination of the issue of substantial truth of the article as a whole as required by California law; (3) the finding of actual malice did not satisfy the First Amendment; and (4) the trial court erred in admitting certain evidence regarding damages.

## I.

Defendant argues that the jury found the LOOK article false in one or more particulars in the second trial only because the trial judge erroneously instructed the jury that the disputed "Nut Tree" allegations were false. Defendant asks us to overturn the judgment in the fourth trial because it rested upon this allegedly defective special finding of falsity in the second trial.

It is too late for defendant to challenge the second jury's finding. The arguments now raised should have been raised after the jury verdict, and on the first appeal. When defendant filed its motion for a judgment n.o.v., it should have moved in the alternative for a new trial on the ground

that the jury should not have been instructed that the "Nut Tree" allegations were false. See Fed.R.Civ.P. 50(b). On the first appeal defendant should have argued that if the judgment n.o.v. were reversed the case should be remanded for a new trial on the issue of falsity as well as on the issue of malice because the instruction that led to the special verdict was in error. See Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 253–54, 61 S.Ct. 189, 195, 85 L.Ed. 147 (1940); Zimmerman v. Mathews Trucking Corp., 205 F.2d 837, 839 (8th Cir. 1953); cf. Oberman v. Dun & Bradstreet, Inc., 507 F.2d 349, 353 (7th Cir. 1974).

Defendant not only failed to object to the special verdict in its post-trial motions or on appeal, but on remand accepted the second jury's finding without protest. Defendant submitted proposed jury instructions for the third trial that assumed the LOOK article had been determined to be defamatory and false in one or more particulars. Similarly, defendant's pretrial statement for the fourth trial proceeded on the assumption that the "Nut Tree" allegations had been found to be false and that the issue of falsity was not before the court.

By failing to challenge the special verdict on the earlier appeal and by acquiescing in the special verdict at the third and fourth trials, defendant waived any right to question the second jury's findings on this appeal. See, e. g., Richardson v. Communications Workers of America, AFL–CIO, 486 F.2d 801, 803–05 (8th Cir. 1973); Haynes v. United States, 418 F.2d 1380, 1382 (Ct.Cl.1969); Calhoun v. Bernard, 359 F.2d 400, 401 (9th Cir. 1966).

Defendant argues that we have discretion to consider the issue of falsity despite its failure to raise the issue earlier, citing United States v. Fullard-Leo, 156 F.2d 756, 757 (9th Cir. 1946), and Verrilli v. City of Concord, 557 F.2d 664 (9th Cir. 1977). Even if these decisions apply, defendant has sug-

---

1. The "Nut Tree" allegations were that plaintiff had a series of nighttime meetings at the Nut Tree restaurant with various Mafia leaders, including Jimmy "The Weasel" Fratianno; that at one meeting Fratianno said he was "excited" about future possibilities because "my man [Al-

ioto]" controlled the board of directors of the First San Francisco Bank; that at another meeting Fratianno stated that plaintiff had assured him that he would be able to obtain loans from the bank; and that Fratianno "did not forget the promise." See note 2.

gested no reason why we should exercise our discretion except that "First Amendment issues are at stake." Litigants raising First Amendment issues are not for that reason alone excused from compliance with basic rules of orderly procedure.

The special verdict rendered at the second trial must stand. The fourth trial judge properly assumed that the Nut Tree allegations were false and defamatory.

## II.

We turn to defendant's second argument. Under California law, defendant can defeat a libel action by proving that the allegedly libelous publication, although not literally true in every detail, is substantially true in its implication, that is, that the "gist" or "sting" of the article, read as a whole, is true. *See Emde v. San Joaquin County Central Harbor Council*, 23 Cal.2d 146, 160, 143 P.2d 20, 28 (1943); *Kurata v. Los Angeles News Publishing Co.*, 4 Cal.App.2d 224, 227–28, 40 P.2d 520, 522 (1935). Defendant contends that by relying solely on the finding in the second trial that the "Nut Tree" allegations were false the trial court deprived defendant of its right to prove that the "gist" or "sting" of the article as a whole was substantially true.

■ The trial judge concluded that the theme of the article was that plaintiff connived with notorious criminals to obtain loans for a member of the Mafia, and the essence of this charge was found in the "Nut Tree" allegation:

> The common thread of the defamatory matter complained of is represented by the allegations that plaintiff assisted Fratianno [an alleged Mafia leader] in obtaining loans from the First Francisco Bank with knowledge of Fratianno's "criminality." Their substance is contained in the following paragraphs which include the so-called "Nut Tree meetings" allegations:

Alioto was then organizing his First San Francisco Bank and seeking out future customers. He had also been thinking of entering politics for the first time. But despite encouragement from fellow Democrats to run for mayor in 1963, he rejected the opportunity because of "business obligations."

Those obligations apparently included a series of nighttime meetings at the Nut Tree, a restaurant along the highway between San Francisco and Sacramento. Among those present at one or more of the conferences, in addition to Alioto, were Fratianno, Bompensiero, Angelo Marino, LaPorte and one of Jimmy Hoffa's top Teamster representatives on the West Coast. Alioto's plan to organize a bank was a subject of intense discussion.

After one meeting, Fratianno said he was "excited" about the possibilities for the future because "my man [Alioto]" would control the bank's board of directors. Fratianno also expressed the belief that he would be able to buy a piece of the bank's stock. Later, after another meeting at the Nut Tree, Fratianno said Alioto was excluding him because of his hoodlum reputation but had assured him he would be able to obtain loans from the bank.

The First San Francisco Bank opened its doors for business in July, 1964. Fratianno, still hungry for capital, did not forget the promise. Negotiations in San Francisco were arranged.

On the morning of November 5, 1964, Fratianno and Angelo Marino met with Joseph Alioto at his 111 Sutter St. law offices to discuss Fratianno's finances. Alioto called the bank to set the loan wheels in motion.[2]

\*    \*    \*    \*    \*    \*

---

2. The court dropped a footnote at this point reading "The previous trials established the so-called Nut Tree meeting allegations to be false and defamatory". Defendant argues that the allegation in the final paragraph of the court's quotation from the LOOK article regarding a meeting in plaintiff's office had not been found to be false at the earlier trials. We are satisfied from the district's court's discussion that the court decided the case on the premise that only the allegations relating directly to the Nut Tree meetings had been found to be false; (*see* 430

As discussed above, the Nut Tree allegations pervade the article. They provide the thread with which Goldman [LOOK's Managing Editor] and the authors spin much of "the web of alliances with . . . the leaders of the Casa Nostra" in which Alioto was said to be enmeshed. In this fashion, the article links Alioto, either directly or inferentially to various insidious activities of organized crime figures.

430 F.Supp. at 1367, 1371. We agree with the trial court's conclusion. Because the "Nut Tree" allegations contained the "gist" or "sting" of the article, and the truth of these allegations was fully tried and determined at the second trial, defendant has not been denied the right to a trial and determination of the issue of the substantial truth of the gist of the article as a whole.

### III.

 Defendant's third argument is that the trial court's finding of actual malice must be set aside because (1) it was based on the court's conclusion as to defendant's state of mind with respect to the "Nut Tree" allegations rather than with respect to the whole article, and (2) it was based upon an objective test of malice rather than upon defendant's actual state of mind. As to the first, since the "Nut Tree" allegations contained the "sting" of the article, the district court properly inquired whether these allegations were published with malice. As to the second, it is beyond dispute that a trial judge may base a finding of subjective malice—that is, that the defendant "in fact entertained serious doubts as to the truth of his publication"—upon evidence that there were "obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 1639, 60 L.Ed.2d 115 (1979), *quoting St. Amant v. Thompson*, 390 U.S. 727, 731, 732, 88 S.Ct. 1323, 1325, 1326, 20 L.Ed.2d 262 (1968). This is precise-

ly what the district court did. *See* 430 F.Supp. at 1370.

### IV.

Defendant's fourth and final argument is that the damage award was improper because the trial court: (1) permitted plaintiff to testify regarding statements made to him by third persons as to the impact of the article upon them; (2) permitted plaintiff to testify that publication of the article caused members of his family to suffer severe mental and emotional distress and apprehension; and (3) based his damage award on the harm caused by publication of the entire article and not just the false and defamatory "sting" of the article.

 Under California law, evidence as to (1) and (2) appear to be inadmissible in a jury trial. *See Turner v. Hearst*, 115 Cal. 394, 47 P. 129 (1896); and *Stevens v. Snow*, 191 Cal. 58, 214 P. 968 (1923). However, while a trial judge sitting without a jury must base his verdict on competent evidence, he has broad discretion to receive evidence that might be inadmissible in a jury trial (*see Rangen, Inc. v. Sterling Nelson & Sons, Inc.*, 351 F.2d 851, 863 (9th Cir. 1965); *Collins v. Owen*, 310 F.2d 884, 885–86 (8th Cir. 1962)); and there is no indication that the judge in this case relied upon the improper evidence in calculating the damage award. As to (3), in the usual case the "gist" or "sting" of the publication will be the source of damage, and there is nothing of substance to suggest the contrary was true in this case. The trial judge correctly stated the standards for determining damages in a libel suit, 430 F.Supp. at 1371–72, and the amount of the award was supported by properly admitted evidence.

Affirmed.

F.Supp. at 1369–71), and that court's inclusion of the final allegation in the quotation was inadvertent. The Court's only discussion of the allegation regarding the meeting in plaintiff's office was not that it had been found to be false in an earlier trial but rather that it had no evidentiary support and publication in the absence of such support was relevant to the issue of malice. See note 3 and related text at 430 F.Supp. 1371.