**Guillermo Gallego MUNOZ, et al.,
Plaintiffs-Appellees,**

v.

**COUNTY OF IMPERIAL, et al.,
Defendants-Appellants.**

No. 81–5332.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 4, 1982.

Decided Feb. 8, 1982.

---

**6.** See footnote 4.

James H. Harmon, County Counsel, El Centro, Cal., David L. Mulliken, Latham & Watkins, San Diego, Cal., for defendants-appellants.

William H. Kronberger, Jr., San Diego, Cal., for plaintiffs-appellees.

Before FERGUSON, NELSON and REINHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

## I. BACKGROUND

Defendant McDougal owns land in the County of Imperial ("County"). With the land, McDougal acquired a conditional use permit which allowed him to sell water on condition that it be sold only for use within the county.[1] McDougal's neighbors complained to the county about water trucks leaving his property, and the county sued in superior court to enforce the prohibition in the conditional use permit against selling water outside the county.[2]

---

1. It emerged in oral argument that McDougal's use permit is the only one of its kind in the County. A parcel with a well some eight miles from McDougal's parcel, and also within the County, has no export ban on water attached to the use of the property.

2. The county's original suit had three causes of action: one for violating the zoning law by

The superior court enjoined McDougal from conducting his trucking operation. The California Court of Appeal held that the condition barring export of water in McDougal's use permit violated the Commerce Clause and that the use permit that allowed McDougal to remove water was void. McDougal appealed to the California Supreme Court, which held that McDougal was subject to the conditions in the permit, and that McDougal, by accepting the benefits of the permit, was estopped from challenging its constitutionality. *County of Imperial v. McDougal*, 19 Cal.3d 505, 511, 138 Cal.Rptr. 472, 564 P.2d 14, 18 (1977). An appeal to the Supreme Court was dismissed for want of a substantial federal question. *McDougal v. County of Imperial*, 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 306 (1977).

Plaintiffs Munoz, Martinez and De Leon then brought an action in United States District Court, seeking declaratory and injunctive relief to prevent the County from enforcing the conditional permit (the defendants are the County, the Sheriff, the County Counsel, members of the County Board of Supervisors, and McDougal). Munoz is a Mexican merchant who has a contract to act as McDougal's water broker. Munoz signed an affidavit on McDougal's behalf in the state trial court proceedings, and also filed as *amicus curiae* before the California Supreme Court. Martinez and De Leon are Mexican merchants who have not been permitted to purchase McDougal's water for export. Plaintiffs argued in district court that the conditional use permit violated the Commerce Clause. The district court, which concluded that plaintiffs would probably succeed on the merits and that they would suffer irreparable harm without an injunction, issued a preliminary injunction restraining the County from enforcing

the restriction in the use permit. Some months later, the California Supreme Court held McDougal in contempt for selling water outside the County, but stayed an order pending the County's appeal in the federal courts.

On appeal to this court, the County claimed that the Anti-Injunction Act, 28 U.S.C. § 2283,[3] removed the district court's power to issue the preliminary injunction. In holding that the Anti-Injunction Act did not bar the federal injunction, this court held that there were no pending state court proceedings left to be enjoined, only the enforcement of the California Supreme Court judgment. *Munoz v. County of Imperial*, 604 F.2d 1174, 1176 (9th Cir. 1979). Like the district court, this court also relied on *Hale v. Bimco Trading Co.*, 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771 (1939) (Frankfurter, J.), which held that strangers to a state court proceeding are not barred by the Anti-Injunction Statute, which was a precursor of the Anti-Injunction Act, from challenging the constitutionality of a statute in federal court when the statute is also under litigation in the state courts.

A majority of the Supreme Court held that the state court action against McDougal was a pending state court proceeding. *County of Imperial v. Munoz*, 449 U.S. 54, 59, 101 S.Ct. 289, 292, 66 L.Ed.2d 258 (1980). However, the majority opinion also remanded the case to determine whether plaintiffs were " 'strangers to the state court proceedings' who were not bound 'as though [they] were parties] to the litigation in the state court.' " *Id.* at 59–60, 101 S.Ct. at 292–293. On remand, the district court found that the plaintiffs were strangers to the state court proceedings and granted the preliminary injunction, 510 F.Supp. 879.

On appeal from the district court, there are two issues:

3. The Anti-Injunction Act, 28 U.S.C. § 2283, provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

violating the conditional use permit, a second for public nuisance, and a third for violation of the county's Groundwater Appropriations Ordinance. The third cause was separated from the first two for trial by stipulation, but never tried. The trial court made no findings on the second cause, having determined that that was unnecessary because McDougal had violated the zoning law. 19 Cal.3d at 508 n.1, 138 Cal.Rptr. 472, 564 P.2d 14.

1. Did the district court err in finding that the Anti-Injunction Act does not bar plaintiffs' proceedings in federal court because plaintiffs are "strangers" to the state court proceedings?

2. Did the district court commit reversible error in granting the preliminary injunction?

## II. THE ANTI–INJUNCTION ACT DOES NOT BAR PLAINTIFFS' PROCEEDING IN FEDERAL COURT BECAUSE PLAINTIFFS ARE "STRANGERS" TO THE STATE COURT PROCEEDINGS.

Defendants argue that the "stranger exception" to the Anti-Injunction Act does not apply in the instant case because this case is factually distinguishable from *Hale v. Bimco*, the case that sets forth the exception. Furthermore, defendants argue that even if *Hale* applies, plaintiffs are not strangers to the state proceeding.

### A. The *Hale* Exception Governs This Case.

■ In *Hale v. Bimco Trading, Inc.*, 306 U.S. 375, 59 S.Ct. 526, 83 L.Ed. 771 (1939) (Frankfurter, J.), the State of Florida sought a writ of mandamus ordering the state road department to enforce a statute requiring the inspection of cement imported into the state. The road department's demurrer, raising the unconstitutionality of the statute under the commerce clause as a defense, was overruled. Bimco, an out-of-state company, subsequently attacked the constitutionality of the statute in federal court and obtained a federal injunction restraining the road department from enforcing the statute. The state court then stayed mandamus proceedings until the United States Supreme Court ruled. The Supreme Court held that 28 U.S.C. § 379, the predecessor of the current Anti-Injunction Act, did not bar the federal injunction since to hold otherwise was to

assert that a successful mandamus proceeding in a state court against state officials to enforce a challenged statute, bars injunctive relief in a United States district court against enforcement of the statute by state officials at the suit of strangers to the state court proceedings. This assumes that the mandamus proceeding *bound the independent suitor in the federal court as though he were a party to the litigation in the state court.* This, of course, is not so. *Chase National Bank v. Norwalk*, 291 U.S. 431, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894.

306 U.S. at 377–78, 59 S.Ct. at 526–27 (emphasis added).

The *Hale* case is factually similar to the instant case. In *Hale*, the state sought a writ of mandamus to enforce a state statute; in the instant case, the county sought an injunction to enforce its use permit. Like the statute in *Hale*, the use permit in this case is of doubtful validity under the Commerce Clause. In *Hale*, as in the instant case, out-of-state parties sought a federal injunction to prevent enforcement of state court judgments. Instead of distinguishing *Hale* from the instant case, the Supreme Court in *County of Imperial v. Munoz*, 449 U.S. 54, 60, 101 S.Ct. 289, 293, 66 L.Ed.2d 258 (1980), merely remanded to determine whether plaintiffs were strangers: "Unless respondents were such 'strangers,' the injunction they sought was barred by the Act." *Id.* at 60, 101 S.Ct. at 293. Because *Hale* does not appear to be distinguishable in any significant respect from the instant case, it should govern. Therefore, this court must decide whether plaintiffs are "strangers" to the state court proceedings.

### B. The Meaning of "Strangers."

1. Strangers to a proceeding are persons who are not bound as though they were parties to the litigation.

■ In referring to "strangers to the state court proceedings," and a party not bound as though he were a party to litigation, *Hale, supra*, at 378, 59 S.Ct. at 527, relied on *Chase National Bank v. Norwalk*, 291 U.S. 431, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894 (1934) (Brandeis, J.). *Chase* stands for the proposition that a person neither party nor privy to litigation in state courts is not

bound by litigation in the state court and may seek an injunction in federal court to stay the state court proceedings. It is clear that in *Chase* "stranger" meant a person who was not bound as a party or privy to litigation. *See id.* at 441, 54 S.Ct. at 479.

Defendants reject *Chase* as "one of the now-discredited cases 'prior to the enactment of Title 28 of the United States Code in 1948 ...'" However, they cite no authority that the *Chase* understanding of "stranger," later adopted by *Hale*, has been discredited. Moreover, it is far from clear that *Chase* is a discredited case. Rather, it appears to be part of the basic law regarding the anti-injunction statute which Congress meant to restore in 1948 with the enactment of the Anti-Injunction Act.[4]

2. Non-parties that do not control litigation are strangers.

The Supreme Court has observed that non-parties who assume control over litigation in which they have a direct financial or proprietary interest and who then seek to redetermine issues previously resolved are bound by collateral estoppel. *Montana v. United States*, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). Such parties are not "strangers to the cause." *Id.*

In *Montana, supra*, the Court considered the following factors in determining that the United States had "exercised control" over previous litigation:

(1) The Government required the previous lawsuit to be filed;

(2) it reviewed and approved the complaint;

(3) it paid attorneys' fees and costs;

(4) it directed the appeal;

(5) it appeared and submitted a brief as *amicus* in the State Supreme Court;

(6) it directed the filing of a notice of appeal;

(7) it effectuated the abandonment of that appeal by a party in the state court proceeding.

The Court concluded, "Thus, although not a party, the United States plainly had a sufficient 'laboring oar' in the conduct of the state-court litigation to actuate principles of estoppel." *Id.* at 155, 99 S.Ct. at 974 (citations omitted). Thus, a non-party that is sufficiently involved in litigation to "actuate principles of estoppel" is not a stranger to that proceeding.

■ *Hale, Chase*, and *Montana* all show that "strangers" are non-parties who are not bound to previous litigation by collateral estoppel. Defendants cite no cases to support their proposition that non-strangers fill a larger class than that of parties and privies bound by previous litigation. Indeed, the Supreme Court's most recent pronouncements on the meaning of strangers reiterate the traditional understanding that they are non-parties not bound by collateral estoppel. *Montana v. United States, supra*, 440 U.S. at 154, 99 S.Ct. at 974; *County of Imperial v. Munoz, supra*, 449 U.S. at 59, 101 S.Ct. at 292.

Collateral estoppel principles have been developed over the years by courts, and present a useful guide for the definition of "strangers" or "non-strangers." In contrast, defendants' definition of "non-strangers" is hopelessly vague: "those persons who, although not closely enough related to a litigating party to be a privy for res judicata purposes, are nonetheless closely enough related to the litigating party to be

---

4. *Mitchum v. Foster*, 407 U.S. 225, 237, 92 S.Ct. 2151, 2159, 32 L.Ed.2d 705 (1972), comments:

In *Toucey v. New York Life Ins. Co.*, 314 U.S. 118, [62 S.Ct. 139, 86 L.Ed. 100] the Court in 1941 issued an opinion casting considerable doubt upon the approach to the anti-injunction statute reflected in its previous decisions. The Court's opinion expressly disavowed the "relitigation" exception to the statute, and emphasized generally the importance of recognizing the statute's basic directive "of 'hands off' by the federal courts in the use of the injunction to stay litigation in a state court." 314 U.S., at 132 [62 S.Ct. at 143]. The congressional response to *Toucey* was the enactment in 1948 of the anti-injunction statute in its present form in 28 U.S.C. § 2283, which, as the Reviser's Note makes evident, *served not only to overrule the specific holding of Toucey, but to restore "the basic law as generally understood and interpreted prior to the Toucey decision."*

(Footnotes omitted and emphasis added).

barred from certain kinds of relitigation by the Anti-Injunction Act." We shall follow established principles for defining "strangers to the cause," rather than embark on a new and nebulous path.

### C. Plaintiffs are Strangers to the State Court Proceedings.

■ Unless plaintiffs are parties or privies as if bound by the state proceedings, they are strangers to those proceedings.

First, plaintiffs were not parties to the state court proceedings, nor do defendants claim otherwise.

Second, the trial judge ruled that plaintiffs and McDougal had no common interest in property and that privity between plaintiffs and McDougal was therefore lacking. Nevertheless, defendants argue that plaintiffs and McDougal are in privity because they have a common interest in water that is the subject matter of litigation. The point of this argument by the defendants is that, by their lights, the right the plaintiffs seek to litigate now is the very same right that McDougal litigated in the state court— his right to sell, and their right to purchase, his water. It is of course hornbook law that in sales transactions the buyer only gets whatever the seller has. If it can be made to appear that the right at issue here is a right which the plaintiffs only obtained through contractual relations with McDougal, then it does indeed follow that they are in privity with him, and that they are not strangers to the state proceedings.

■ This argument fails, however. The right which the plaintiffs seek to litigate is *not* one which they obtained through contractual relations with McDougal. It is a completely independent right deriving directly from the Commerce Clause—the right to be free of state-imposed restrictions that unreasonably burden their efforts to engage in interstate and foreign commerce. McDougal, to be sure, has a similar right, which the California Supreme Court held he was equitably estopped from asserting because he accepted the benefits of the conditional use permit. To hold that the plaintiffs' Commerce Clause right is simi-

larly extinguished by McDougal's acceptance of those benefits would be a serious error.

The point is most easily made by means of an example. Suppose the conditional use permit prohibited McDougal from selling water to Mormons. A Mormon plaintiff in privity of contract with McDougal could not be equitably estopped from challenging the constitutional validity of the use permit. Such a plaintiff would have a personal right arising directly from the Fourteenth Amendment—a right that he or she could not have surrendered merely by entering into a contract with McDougal. Such a plaintiff would not simply "stand in the seller's shoes" with respect to that right. In such a case, the seller, equitably estopped from asserting the buyer's constitutional right because he had accepted the benefits of the use permit, could not adequately represent the buyer's right. The principle relied on by the defendants here—"federal courts will bind a non-party whose interests were represented adequately by a party in the original suit," *Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. 1977), would not apply. The same reasoning should be applied where the right at issue is a Commerce Clause right.

■ Third, plaintiffs are not privies as if bound by the state proceeding, because they did not control the state court proceeding. De Leon and Martinez had no relation to the state proceedings. Munoz entered as *amicus curiae* before the California Supreme Court, but the filing of an amicus brief has never been enough to bind a non-party to the result of a proceeding. *Stryker v. Crane*, 123 U.S. 527, 540, 8 S.Ct. 203, 209, 31 L.Ed. 194 (1887); *Boeing Airplane Co. v. Aeronautical Industrial Dist.*, 91 F.Supp. 596, 602 (W.D.Wash.1950), *aff'd*, 188 F.2d 359 (9th Cir. 1951). Munoz also signed a declaration on McDougal's behalf in the state court proceedings. However, the amicus brief and the declaration fall far short of the control exerted in *Montana v. United States, supra*, where the court concluded that a party had a sufficient "labor-

ing oar" in the conduct of state-court litigation to actuate principles of estoppel. Finally, defendants point to the naming of McDougal as a defendant in the federal complaint as proof that plaintiffs and McDougal acted in concert. There is, however, no direct evidence for this, and there are other explanations for plaintiffs' naming McDougal as a defendant.[5]

Because plaintiffs are not parties or privies as if bound by the state proceedings and because they did not control a party to the state proceedings, they are strangers to those proceedings.

## III. THE PRELIMINARY INJUNCTION WILL NOT BE OVERTURNED

 The panel that heard the County's first appeal from the district court expressly noted that the County did not challenge the district court's findings that the elements necessary for the granting of preliminary injunctive relief were present. *Munoz v. County of Imperial*, 604 F.2d 1174, 1175–76 (9th Cir. 1979). In that appeal, the only issue was whether the Anti-Injunction Act precluded the district court from issuing the preliminary injunction. The same issue was the only one considered by the Supreme Court on certiorari. The highest court vacated the judgment below and remanded to the court of appeals, which remanded to the district court, solely to determine whether plaintiffs were " 'strangers to the state court proceedings' who were not bound as though [they were parties] to the litigation in the state court." *County of Imperial v. Munoz*, 449 U.S. 54, 59–60, 101 S.Ct. 289, 292–293, 66 L.Ed.2d 258 (1980).

From the above recital of previous proceedings, it is apparent that defendants, by challenging the findings of the district court regarding preliminary injunctive re-

lief, are now raising a new issue that they did not raise in their last appeal to this court. We need not and do not consider a new contention that could have been but was not raised on the prior appeal.[6] *Alioto v. Cowles Communications, Inc.*, 623 F.2d 616, 618 (9th Cir. 1980); *Penn Int'l Industries v. Pennington Corp.*, 583 F.2d 1078, 1082 (9th Cir. 1978); *Calhoun v. Bernard*, 359 F.2d 400, 401 (9th Cir. 1966). It is already the law of the case that the injunction was issued properly.

AFFIRMED.

---

5. Plaintiffs claim that they had legitimate motives for naming McDougal as defendant:

This would seem reasonable in light of the third cause of action seeking specific performance and McDougals [sic] alleged conduct in demanding affidavits under penalty of perjury (see declaration of Juan De Leon in support of preliminary injunction).

Appellees' Brief at 30 n.4.

6. The terms of the new injunction do not differ in any material respect from those of the original injunction that this court affirmed and that the Supreme Court vacated, nor do the evidence and arguments used to support or oppose the new injunction differ in any material respect from the original evidence and arguments.