[L.A. No. 30681. May 25, 1977.]

COUNTY OF IMPERIAL, Plaintiff and Respondent, v.
DONALD C. McDOUGAL, Defendant and Appellant.

506

COUNSEL

Donald C. McDougal, Jr., Gaylord L. Henry and Alex A. Harper for Defendant and Appellant.

Murry Luftig as Amicus Curiae on behalf of Defendant and Appellant.

James H. Harmon, County Counsel, for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, R. H. Connett and E. Clement Shute, Jr., Assistant Attorneys General, and Richard C. Jacobs, Deputy Attorney General, as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

**MOSK, J.**—In 1967, Imperial County (county) issued to W. Erle Simpson a use permit to allow commercial sales of water from a well on Simpson's property, which was located in a residential subdivision. The permit contained a limitation that water could be sold for use only within the county. Simpson did not challenge the condition, and he sold only small quantities of water from the well for local use. In 1970, the tract in which Simpson's property was located was zoned for low intensity use, but the zoning allowed the development of natural resources for commercial purposes upon the issuance of a conditional use permit.

Simpson sold the property to defendant Donald C. McDougal in 1972. McDougal, without obtaining a new permit pursuant to the 1970 enactment, proceeded to substantially increase the volume of sales of

water from the well, and numerous trucks entered the property for the purpose of transporting the water. He failed to comply with the limitation in the Simpson permit against the sale of water for use outside the county, and much of the water from the well was sold for distribution in Mexico.

The county sought injunctive and declaratory relief, alleging that McDougal was violating the 1970 zoning law by selling water for export and by employing tank trucks to carry large amounts of water from the well, without a conditional use permit. The trial court found in the county's favor and enjoined McDougal from "conducting a trucking operation on the premises similar to that which occurred commencing on or about June 30, 1972."[1]

On this appeal from the ensuing judgment, McDougal claims that he is not required to secure a permit pursuant to the 1970 zoning ordinance because under the permit issued to Simpson he has a vested right to increase the volume of sales from the well and to employ tank trucks for hauling the water away, and that the limitation in the permit against sales of water for use outside the county is invalid.

The subdivision in which Simpson's land was located consisted of 16 10-acre parcels which were governed by deed restrictions providing that the lots were to be used for residential purposes. Although the tract had not been comprehensively zoned in 1967 when Simpson applied for his permit, an interim zoning ordinance required a permit for any land uses other than those specifically exempted therein, and county officials notified Simpson that he was required to obtain a permit in order to conduct a commercial water sale business.

Public hearings were held on Simpson's application, initially before the planning commission, and subsequently before a joint meeting of the commission and the board of supervisors. At the commission meeting, two other landowners in the tract argued against the granting of the permit on the ground that it would interfere with the quiet enjoyment of their property, and the county's chief planning officer recommended against granting the permit for the same reason.

---

[1] A second cause of action alleged that the manner in which McDougal operated his business constituted a public nuisance, and a third asserted that McDougal was violating the county's Groundwater Appropriations Ordinance. The third cause of action was by stipulation of the parties ordered to be separated from the first and second, and to be tried only upon good cause being shown on motion of either party. No trial of this count was held. The trial court made no findings on the second cause of action alleging a nuisance, determining that such findings were unnecessary because of its conclusion that McDougal was violating the county's zoning laws.

Between 1968 and 1972, only a few tank trucks were loaded with water from the well, and Simpson sold a total of approximately 500,000 gallons of water in those years. When McDougal purchased the property in 1972, he was aware of the restriction against the sale of water for export from the county and knew that Simpson had not made intensive commercial use of the well. McDougal requested the board of supervisors to remove the export limitation, but he was advised that a conditional use permit would be required to accomplish this result. Without applying for such a permit, he entered into contracts to sell water for distribution in Mexico, and beginning in July 1972 as many as 44 trucks a day, with a capacity of 250,000 gallons, loaded water at the well day and night.

The neighboring landowners protested the noise and fumes generated by the traffic, and county officials, contending that McDougal was required to secure a conditional use permit under the 1970 ordinance, demanded that he discontinue his operation. Thereafter, McDougal applied for a permit, but with insistence that his application was without prejudice to any subsequent claim that no permit was required. The permit was denied, and he unsuccessfully appealed the denial to the board of supervisors.

In October 1972, the county brought this action to restrain McDougal from selling water from the well or from allowing tank trucks to enter his property for the purpose of carrying water away, and it also sought a declaration that McDougal was violating the 1970 zoning ordinance.

The trial court found that McDougal's business "as conducted on the premises commencing on or about June 30, 1972" was in violation of the zoning ordinance because he had failed to secure a conditional use permit. It found further that the Simpson permit did not entitle McDougal "to conduct his type of operation" and that the restriction contained in that permit was designed to prevent the intensive commercial operation undertaken by McDougal because it would be incompatible with the surrounding residential land uses. Finally, the court determined that McDougal's business constituted an illegal "formidable expansion" of the usage contemplated under the Simpson permit, and that any effect on international commerce due to the restriction was merely incidental to a valid exercise of the police power designed to regulate local land use.

The court's judgment declaring that McDougal was in violation of the 1970 ordinance and enjoining him from "conducting a trucking operation on the premises similar to that which occurred commencing on June

30, 1972" appears to relate both to the sale of water for export outside the county and to the use of substantial numbers of trucks to carry the water from the property. We conclude that the judgment must be upheld in its first aspect but that there was insufficient evidence to justify the prohibition against the manner in which the business was operated.

McDougal's fundamental assertion is that he was not required to obtain the conditional use permit required by the 1970 zoning ordinance because he had a vested right, pursuant to the Simpson permit, to sell water from the well, and that he was not compelled to comply with the geographic restriction in the permit because it is invalid.

■ Initially, we observe that a conditional use permit, unlike a nonconforming use, allows a use permitted rather than proscribed by the zoning regulations but because of the possibility that the permitted use could be incompatible in some respects with the applicable zoning, a special permit is required.[2] (3 Anderson, American Law of Zoning (2d ed. 1977) p. 359.) ■ Such permits run with the land (*Cohn v. County Board of Supervisors* (1955) 135 Cal.App.2d 180, 184 [286 P.2d 836]), and McDougal succeeded to any benefits which Simpson enjoyed under the permit issued to him. Thus, if Simpson would have been allowed to carry on his business in the manner McDougal employed after June 1972, then McDougal was operating within the permit and not required to secure a permit under the 1970 ordinance.

It is equally clear, however, that McDougal is subject to the limitations in the permit under which he claims, and that he can assert no greater rights therein than Simpson enjoyed. Simpson, by failing to challenge the limitations imposed upon him by the permit, waived his right to object to the condition prohibiting the sale of water for use outside the county. At the joint meeting between the planning commission and the board of supervisors during which issuance of the permit was discussed, he was represented by counsel, and at that hearing voluntarily withdrew from his application a request to export water to Mexico. The deputy county counsel had stated as his opinion that the proposed limitation on the export of water was valid. Thereafter, Simpson accepted the benefits afforded by the permit and conducted himself in accordance therewith.

■ A number of cases have held that a landowner or his successor in title is barred from challenging a condition imposed upon the granting of

[2] Section 83421 of the county's ordinances authorized the issuance of a conditional use permit if "such uses as deemed essential or desirable to the public convenience or welfare, and are in harmony with the various elements or objectives of the comprehensive general plan."

a special permit if he has acquiesced therein by either specifically agreeing to the condition or failing to challenge its validity, and accepted the benefits afforded by the permit. (*Edmonds* v. *County of Los Angeles* (1953) 40 Cal.2d 642, 650 [255 P.2d 772]; *Zweifel Manufacturing Corp.* v. *City of Peoria* (1957) 11 Ill.2d 489 [144 N.E.2d 593, 595]; *Psyhogios* v. *Village of Skokie* (1972) 4 Ill.App.3d 186 [280 N.E.2d 552, 556]; *Skipjack Cove Marina, Inc.* v. *County Commissioners* (1969) 252 Md. 440 [250 A.2d 260, 265-267]; *Stevenson* v. *Palmer* (1969) 223 Tenn. 485 [448 S.W.2d 67, 69]; cf. *Naper Aero Club* v. *County of Du Page* (1964) 30 Ill.2d 447 [197 N.E.2d 1].) ██ Thus, McDougal is estopped to assert that the prohibition in the Simpson permit against the sale of water for use outside the county is invalid, and he is bound by the limitation.[3]

██ We come, then, to the second aspect of the trial court's determination, i.e., that the conditional use permit issued to Simpson did not authorize McDougal to conduct his water sale business as an intensive commercial operation, with numerous trucks entering and leaving the premises night and day. As we have seen, the permit contained no express limitation in this regard. The trial court's determination was based upon its conclusion that the purpose of the restriction against the sale of water for export was to prevent intensive commercial exploitation of the well on Simpson's property in a manner incompatible with the surrounding residential area. McDougal claims that the evidence was insufficient to support this determination, and we agree.

The record establishes that in July 1967 two neighbors opposed Simpson's application for a permit before the planning commission on the ground that commercial use of the property would violate their right of quiet enjoyment, and the county's chief planning officer recommended against granting the permit for the same reason. He testified that the commission was concerned both about the export of water and "intensification of usage of the land" in considering Simpson's application, but did not refer to any specific evidence in this regard. The planning commission determined to hold the matter over for a joint meeting with the board of supervisors in order to allow time for the two bodies to

---

[3] In view of this conclusion, we need not decide whether the prohibition against the export of water was valid. (See *City of Altus, Oklahoma* v. *Carr* (W.D.Tex. 1966) 255 F.Supp. 828.) *Shelley* v. *Kraemer* (1948) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R.2d 441]. relied upon by McDougal, is inapposite. In that case, it was held that the enforcement by a state court of a racially restrictive covenant in a real estate contract constituted state action, denying the black purchasers equal protection of the laws. *Shelley* did not involve the waiver of rights or the challenge to the validity of a condition relating to the economic value of a permit whose benefits the permittee sought and accepted. Nor can Simpson's right to export water from the county be analogized to the constitutional rights which the petitioners in *Shelley* sought to vindicate.

formulate a water exportation policy for the county. That hearing was held in September, and members of both bodies expressed concern over the amount of water being exported from the county to Mexico. After Simpson agreed to remove his request to sell water for use in Mexico, the planning commission reconvened and voted to grant the Simpson permit on the condition that water from the well would be sold only for use within the county. No mention was made at the joint meeting of matters relating to the use of Simpson's land, and in the resolution of the planning commission granting the permit reference was made to problems of water export but none to limiting the character of the commercial usage of Simpson's property.[4]

The evidence relied upon by the county is insufficient to sustain the trial court's finding that the restriction was designed to prevent intensive commercial use of Simpson's property. If the commercial character of the proposed use had been a major concern of the commission it was not without means to control Simpson's business by the imposition of appropriate restrictions. Instead, the commission, after extensive discussion of the water exportation problem, issued the permit conditioned only upon a limitation on the export of water, in a resolution which referred only to that issue. Under these circumstances, we must conclude that the limitation was intended to accomplish only what it clearly states, i.e., a prohibition against exporting water from the county.

Thus, the trial court's judgment must be affirmed insofar as it prohibits McDougal from violating the restriction against the exportation of water from the county, and reversed to the extent that it determines that McDougal violated the 1970 zoning ordinance by allowing large numbers of trucks to haul water from the well and enjoins him from operating his business in this manner.

Our decision does not mean, of course, that the county may not employ means to assure that McDougal does not conduct his business by methods which create a nuisance. As we have seen, the second cause of action in the county's complaint alleged a nuisance, but the trial court found it unnecessary to make findings on this issue because it determined that McDougal's conduct violated the zoning ordinance. Upon

[4]McDougal asserts that the trial court erred in finding that there was public opposition to the granting of the Simpson permit because the resolution of the planning commission granting the permit states otherwise. The resolution, dated September 11, 1967, refers to the joint meeting between the board of supervisors and the planning commission and states that "there was no opposition present at *this* meeting." (Italics supplied.) Obviously, the resolution refers to the September meeting rather than the July hearing before the planning commission alone. It is clear from the testimony there was opposition to the granting of Simpson's permit at the July hearing.

remand, the trial court may consider appropriate findings on the county's allegations that McDougal's operation of his business constitutes a nuisance.

One final matter should be noted. The county contended at the trial that McDougal was prohibited from selling water from his well by section 83400 of the county's ordinances, which provides that nonconforming uses of land must be discontinued within one year. The trial court found that "[A]ny nonconforming use right" of McDougal was terminated by this provision. We have concluded that McDougal had a valid conditional use permit for commercial operation of the well, and the operation of his business did not constitute a nonconforming use.

The trial court's judgment is affirmed insofar as it prohibits McDougal from selling water for use outside the county; it is reversed to the extent that it enjoins McDougal from employing large numbers of tank trucks to haul water from his property and determines that such conduct violates the county's 1970 zoning ordinance.

Tobriner, Acting C. J., Clark, J., Richardson, J., Sullivan, J.,* Devine, J.,† and Brown (G. A.), J.,‡ concurred.

A petition for a rehearing was denied on July 7, 1977, and the following opinion was then rendered:

**THE COURT.**—On petition for rehearing, McDougal asserts for the first time the contention that because Simpson was required to accept the prohibition against the export of water as a condition of obtaining the permit, any waiver of rights by him was invalid because made under duress. We have consistently refused to consider points on rehearing not previously raised in the Court of Appeal or in this court (*Employers' L.A. Corp.* v. *Indus. Acc. Com.* (1918) 177 Cal. 767, 771 [171 P. 935]; *Prince* v. *Hill* (1915) 170 Cal. 192, 195 [149 P. 587]; *People* ex rel. *Dept. of Public Works* v. *Mascotti* (1962) 206 Cal.App.2d 772, 779 [23 Cal.Rptr. 846, 24 Cal.Rptr. 679]; *Bradley* v. *Bradley* (1949) 94 Cal.App.2d 310, 312 [210 P.2d 537, 211 P.2d 638].)

Bird, C. J., was of the opinion the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

†Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

‡Assigned by the Chairman of the Judicial Council.