[No. B087330. Second Dist., Div. Five. July 29, 1996.]

EARL SOUNHEIN et al., Plaintiffs and Appellants, v.
CITY OF SAN DIMAS et al., Defendants and Respondents.

1182

**COUNSEL**

Barbosa, Garcia & Barnes and Douglas D. Barnes for Plaintiffs and Appellants.

Brown, Winfield & Canzoneri, J. Kenneth Brown and Mark W. Steres for Defendants and Respondents.

**OPINION**

**GRIGNON, J.**—Appellants Earl and Alana Sounhein appeal from the denial of their petition for a supplemental writ of mandate in connection with their application for a conditional use permit to build a second residential unit on their property located in the City of San Dimas. This court previously affirmed a judgment ordering the City of San Dimas to process the Sounheins' application under the standards set forth in Government Code[1] section 65852.2, subdivision (b). (*Sounhein* v. *City of San Dimas* (1992) 11 Cal.App.4th 1255 [14 Cal.Rptr.2d 656].) The City of San Dimas processed the Sounheins' application and granted the Sounheins a conditional use

---

[1]All further statutory references are to the Government Code, unless otherwise indicated.

permit with certain conditions. The Sounheins sought a supplemental writ ordering respondents City of San Dimas and the City Council of San Dimas (collectively, the City) to vacate certain owner-occupant conditions of the conditional use permit. The Sounheins contend that the disputed owner-occupant conditions are in violation of section 65852.2, subdivision (b). We conclude the disputed owner-occupant conditions are valid and affirm.

STATUTORY SCHEME

We begin with the statutory scheme, because section 65852.2 is necessary to a complete understanding of the procedure and facts involved in this matter. In 1982, the Legislature enacted section 65852.2 in an effort to increase affordable housing in the state. (*Wilson* v. *City of Laguna Beach* (1992) 6 Cal.App.4th 543, 545 [7 Cal.Rptr.2d 848].) Subdivision (a) of section 65852.2 encourages local governments to enact ordinances allowing and regulating second residential units in single-family and multifamily zones where they otherwise would be prohibited.[2] Subdivision (c) of section 65852.2 permits local governments to adopt ordinances completely precluding second residential units within single-family and multifamily zones only if certain findings are made.[3] Subdivision (b) of section 65852.2 provides that, if the local governments do not enact ordinances under either subdivision (a) or (c), then they must grant a conditional use permit for any second residential units which meet the requirements of the subdivision.

Section 65852.2, subdivision (b) provides in pertinent part: "(1) When a local agency which has not adopted an ordinance governing second units in accordance with subdivision (a) or (c) receives its first application . . . for a

---

[2]Section 65852.2, subdivision (a) provides: "Any local agency may, by ordinance, provide for the creation of second units in single-family and multifamily residential zones. The ordinance: (1) May designate areas within the jurisdiction of the local agency where second units may be permitted. The designation of areas may be based on criteria, which may include, but are not limited to, the adequacy of water and sewer services and the impact of second units on traffic flow. [¶] (2) May impose standards on second units which include, but are not limited to, parking, height, setback, lot coverage, architectural review, and maximum size of a unit. [¶] (3) May provide that second units do not exceed the allowable density for the lot upon which the second unit is located, and that second units are a residential use that is consistent with the existing general plan and zoning designation for the lot. [¶] (4) May establish a process for the issuance of a conditional use permit for second units. [¶] (5) Shall not be considered in the application of any local ordinance, policy, or program to limit residential growth."

[3]Section 65852.2, subdivision (c) provides: "No local agency shall adopt an ordinance which totally precludes second units within single-family or multifamily zoned areas unless the ordinance contains findings acknowledging that the ordinance may limit housing opportunities of the region and further contains findings that specific adverse impacts on the public health, safety, and welfare that would result from allowing second units within single-family and multifamily zoned areas justify adopting the ordinance."

conditional use permit pursuant to this subdivision, the local agency shall accept the application and approve or disapprove the application pursuant to this subdivision unless it adopts an ordinance in accordance with subdivision (a) or (c) within 120 days after receiving the application. . . . [E]very local agency shall grant a special use or a conditional use permit for the creation of a second unit if the second unit complies with all of the following: [¶] (A) The unit is not intended for sale and may be rented. [¶] (B) The lot is zoned for single-family or multifamily use. [¶] (C) The lot contains an existing single-family dwelling. [¶] (D) The second unit is either attached to the existing dwelling and located within the living area of the existing dwelling or detached from the existing dwelling and located on the same lot as the existing dwelling. [¶] (E) The increased floor area of an attached second unit shall not exceed 30 percent of the existing living area. [¶] (F) The total area of floor space for a detached second unit shall not exceed 1,200 square feet. [¶] (G) Requirements relating to height, setback, lot coverage, architectural review, site plan review, fees, charges, and other zoning requirements generally applicable to residential construction in the zone in which the property is located. [¶] (H) Local building code requirements which apply to detached dwellings, as appropriate. [¶] (I) Approval by the local health officer where a private sewage disposal system is being used, if required. [¶] (2) No other local ordinance, policy, or regulation shall be the basis for the denial of a building permit or a use permit under this subdivision. [¶] (3) This subdivision establishes the maximum standards that local agencies shall use to evaluate proposed second units on lots zoned for residential use which contain an existing single-family dwelling. No additional standards, other than those provided in this subdivision or subdivision (a), shall be utilized or imposed, except that a local agency may require an applicant for a permit issued pursuant to this subdivision to be an owner-occupant."

### FACTS AND PROCEDURAL BACKGROUND

We begin with the facts as stated in our earlier opinion. "The Sounheins own a home in the [C]ity and wanted to build on their property a second unit, an accessory rental apartment. The Sounheins' property is in an area of the [C]ity zoned for duplexes. The [C]ity advised the Sounheins that [it] would not grant approval for them to build a second unit but suggested that they apply for a conditional use permit pursuant to the provisions of . . . section 65852.2.[4]

"The Sounheins revised their plans and on February 9, 1990, submitted an application for a conditional use permit [pursuant to section 65852.2] and the

_____

[4]Although the Sounhein property is zoned MF-D (multifamily-duplex), the property does not meet the minimum lot size requirements to build a duplex.

requisite application fee. The [C]ity acknowledged receipt of their application but informed them it was incomplete. The [C]ity requested that the Sounheins provide further information regarding a more complete legal description of the property, two appropriate scaled print maps, twelve prints of the development plan and scaled drawings of the exterior elevations. The [C]ity also noted to the Sounheins that several items regarding setback and square footage did not comply with existing regulations and that their plans had to be revised to conform with applicable zoning regulations or a variance application also had to be submitted.

"The Sounheins thereafter met several times with [C]ity personnel, submitted additional documents, revised their plans and on May 24, 1990, submitted a revised site plan for a conditional use permit for the proposed second unit. On July 10, 1990, in response to the Sounheins' application [the first application received by the City pursuant to section 65852.2], the [C]ity enacted Ordinance No. 941 [pursuant to subdivision (c) of section 65852.2], a ban on second unit accessory apartments. The Sounheins brought an action for a writ of mandate (Code Civ. Proc., § 1085) and for declaratory relief. The trial court severed the mandate proceedings from those for declaratory relief and entered judgment for the Sounheins, granting the peremptory writ of mandate. The [C]ity appeal[ed]." (*Sounhein* v. *City of San Dimas, supra,* 11 Cal.App.4th at pp. 1258-1259.)

We held that the City had failed to give the requisite public notice and hold the requisite public hearing before adopting the ordinance and had also failed to adopt the ordinance within the applicable time period, i.e., 120 days after February 9, 1990. We concluded that since the City had failed to adopt a valid ordinance regulating or prohibiting second units under section 65852.2, subdivision (a) or (c), it was required to process the Sounheins' application under the standards of section 65852.2, subdivision (b). (*Sounhein* v. *City of San Dimas, supra,* 11 Cal.App.4th at p. 1262.) On November 12, 1991, the superior court issued a peremptory writ of mandate ordering the City to process the Sounheins' conditional use permit application pursuant to section 65852.2, subdivision (b).

The City processed the Sounheins' application for a conditional use permit. On September 28, 1993, the City approved the conditional use permit application subject to certain conditions, including: "To maintain use of the second residential dwelling unit, the owner of the subject property shall be the occupant of the primary residence or the second residential dwelling unit. . . . [¶] Upon sale of the property, the subsequent owner

shall file an affidavit with the City stating that the owner is an owner[-]occupant. Failure to satisfy this condition shall be grounds for revocation of the use permit."[5]

On October 28, 1993, the City filed with the superior court a return to the writ of mandate, informing the superior court that the Sounheins' conditional use permit application had been processed and approved. On May 24, 1994, the Sounheins filed an objection to the City's return and a petition for a supplemental writ of mandate seeking vacation of the owner-occupant conditions. The City opposed the supplemental petition on the grounds that the statute of limitations had expired, a supplemental petition was not an appropriate vehicle to challenge the conditions, and the owner-occupant conditions were valid. On July 12, 1994, the superior court denied the supplemental petition. The Sounheins appealed.

## DISCUSSION

*Conditions of Conditional Use Permits*

A conditional use permit is administrative permission for uses not allowed as a matter of right in a zone, but subject to approval. (Cal. Zoning Practice (Cont.Ed.Bar 1996) Types of Zoning Relief, § 7.64, p. 299.) The issuance of a conditional use permit may be subject to conditions. (*J-Marion Company, Inc.* v. *County of Sacramento* (1977) 76 Cal.App.3d 517, 522 [142 Cal.Rptr. 723].) A conditional use permit regulates land, not individuals. (§ 65909.) Conditions of approval must relate to the property and not to the particular applicant. (*Anza Parking Corp.* v. *City of Burlingame* (1987) 195 Cal.App.3d 855, 858 [241 Cal.Rptr. 175].) A condition specifically related to an individual is invalid. (*Id.* at p. 858; *County of Imperial* v. *McDougal* (1977) 19 Cal.3d 505, 510 [138 Cal.Rptr. 472, 564 P.2d 14].) A condition must be reasonably related to the use of the property for which the conditional use permit is requested. (§ 65909.) A condition which relates solely to the applicant for the conditional use permit does not relate to the use and zoning of the property. (*Anza Parking Corp.* v. *City of Burlingame, supra,* 195 Cal.App.3d at p. 859.)

---

[5]The Sounheins and their counsel were present at the hearing approving the conditional use permit and objected to the foregoing owner-occupant conditions. The Sounheins' attorney discussed the disputed conditions with the city attorney. The attorneys agreed the Sounheins could proceed with design review prior to executing an acceptance of the conditions of the conditional use permit, so that the Sounheins could challenge the owner-occupant conditions together with any other disputed design conditions. This agreement was confirmed in a letter to the city attorney from the Sounheins' attorney, dated October 19, 1993. The Sounheins proceeded to the design review. On January 25, 1994, the design review board notified the Sounheins of its decision to approve the project with certain conditions, which are not the subject of this appeal.

Conditions of a permit run with the land, once the benefits of the permit have been accepted. (*Ojavan Investors, Inc.* v. *California Coastal Com.* (1994) 26 Cal.App.4th 516, 526 [32 Cal.Rptr.2d 103].) Subsequent owners of the land have no greater rights than those of the owner at the time the conditional use permit was issued. (*County of Imperial* v. *McDougal, supra,* 19 Cal.3d at p. 510; *Ojavan Investors, Inc.* v. *California Coastal Com., supra,* 26 Cal.App.4th at p. 527.)

## Statutory Interpretation

■    The objective of statutory interpretation is to ascertain the legislative intent. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Statutory interpretation is guided by the so-called "plain-meaning" rule. (*Ibid.*) "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . . [¶] But the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

## Legislative Intent and History

■    We consider the legislative intent of section 65852.2. "More than a decade ago the state Legislature declared the supply of housing in California was insufficient to meet demand and the imbalance was likely to become worse in the foreseeable future. In the space of two pages, the Witkin treatise on California law cites no less than 19 different sets of laws and programs as 'illustrative' of the Legislature's efforts to both increase the housing available to Californians and help make it affordable. [¶] One of California's more 'innovative' efforts is section 65852.2 of the Government Code—

sometimes referred to as the 'granny flat' statute. That statute encourages local governments to enact their own ordinances allowing and regulating 'second units' in single-family and multifamily zones where they otherwise would be prohibited. If the local governments do not enact such an ordinance, then they *must* grant a 'conditional use permit' for any second units which meet the requirements enumerated in the statute." (*Wilson* v. *City of Laguna Beach*, *supra*, 6 Cal.App.4th at pp. 545-546, italics in original, fns. omitted.) Numerous local governments opposed section 65852.2. (6 Cal.App.4th at p. 546.)

In adopting section 65852.2, the Legislature expressly declared its intent: "(a) The Legislature finds and declares that there is a tremendous unmet need for new housing to shelter California's population. The unmet housing needs will be further aggravated by the severe cutbacks in federal housing programs. [¶] (b) The Legislature finds and declares that California's existing housing resources are vastly underutilized due in large part to the changes in social patterns. The improved utilization of this state's existing housing resources offers an innovative and cost-effective solution to California's housing crisis. [¶] (c) The Legislature finds and declares that the state has a role in increasing the utilization of California's housing resources and in reducing the barriers to the provision of affordable housing. [¶] (d) The Legislature finds and declares that there are many benefits associated with the creation of second-family residential units on existing single-family lots, which include: [¶] (1) Providing a cost-effective means of serving development through the use of existing infrastructures, as contrasted to requiring the construction of new costly infrastructures to serve development in undeveloped areas. [¶] (2) Providing relatively affordable housing for low- and moderate-income households without public subsidy. [¶] (3) Providing a means for purchasers of new or existing homes, or both, to meet payments on high interest loans. [¶] (4) Providing security for homeowners who fear both criminal intrusion and personal accidents while alone." (Stats. 1982, ch. 1440, § 1, p. 5500.)

In 1994, the Legislature amended section 65852.2 in minor part and added section 65852.150, which provides: " The Legislature finds and declares that second units are a valuable form of housing in California. Second units provide housing for family members, students, the elderly, in-home health care providers, the disabled, and others, at below market prices within existing neighborhoods. Homeowners who create second units benefit from added income, and an increased sense of security. [¶] It is the intent of the Legislature that any second-unit ordinances adopted by local agencies have the effect of providing for the creation of second units and that provisions in these ordinances relating to matters including unit size, parking, fees and

other requirements, are not so arbitrary, excessive, or burdensome so as to unreasonably restrict the ability of homeowners to create second units in zones in which they are authorized by local ordinance." (Stats. 1994, ch. 580, § 1 (Assem. Bill No. 3198).)

The legislative history of section 65852.2 indicates that the purpose of the owner-occupancy requirement of section 65852.2 is to protect neighborhood stability and the character of existing family neighborhoods and to discourage speculation and absentee ownership. (Cal. Dept. of Housing and Community Development, Sen. Bill No. 1534 Fact Sheet (Mar. 1982); Cal. Dept. of Housing and Community Development, A Survey of Second Unit Ordinances in California, An Approach to Increasing the Housing Supply (Nov. 1982) pp. 25-26, 42, 44.)[6] The evident intent of the Legislature in enacting section 65852.2 was to increase the state's supply of affordable housing without dramatically changing the character and stability of existing family neighborhoods. The statute is a careful balancing of the two competing interests.

### Owner-Occupant Conditions

The Sounheins contend that the plain-meaning rule must be used to interpret the owner-occupant provision of section 65852.2: "No additional standards . . . shall be utilized or imposed, except that a local agency may require an applicant for a permit issued pursuant to this subdivision to be an owner-occupant." (§ 65852.2, subd. (b)(3).) They argue that the statute expressly provides for only one owner-occupant condition for issuance of a conditional use permit for a second unit, namely that the *applicant* for the conditional use permit be an owner-occupant. They argue further that the owner-occupant conditions of the conditional use permit issued by the City impermissibly extend the owner-occupant applicant requirement beyond the express bounds of the statute to all owners after the permit is issued. They conclude the statute allows a local government to require that only the applicant for the permit be an owner-occupant, while after the permit issues no continuing owner-occupant conditions may be imposed.

It is true that the word "applicant," standing alone, may be interpreted as referring only to the owner of the property at the time of the application for the conditional use permit. However, this interpretation is not the only reasonable interpretation and is not the interpretation which most clearly effectuates the purpose of the statute. Moreover, such an interpretation is inconsistent with the express legislative intent, the legislative history, the purpose of the statute and well-established law concerning conditions accompanying conditional use permits.

---

[6]We have taken judicial notice of the legislative history of section 65852.2.

We look first to the express legislative intent of the statute as set forth in the uncodified findings and declarations adopted in 1982 and section 65852.150 adopted in 1994. Section 65852.150 and the 1982 uncodified findings and declarations refer to *homeowners* who create a second unit and discuss the benefits these homeowners will obtain from the second unit in the form of added income and an increased sense of security. This language certainly contemplates an owner-occupant of the main or primary unit. In addition, section 65852.150 refers to the provision of affordable housing for family members and in-home health care providers. Once again, these two groups of prospective occupants of the second unit certainly contemplate an owner-occupant of the main or primary unit.

The express legislative intent set forth in the 1982 uncodified findings and declarations and section 65852.150 is buttressed by the legislative history of section 65852.2, which clearly evidences the permissibility of an owner-occupant condition of a conditional use permit. It is to be remembered that this legislation faced fierce opposition from local governments, many of which believed the legislation would destroy existing family neighborhoods. Although the primary purpose of the legislation was to create more affordable housing in existing neighborhoods, the additional housing was to be created with a minimal disruption of neighborhood stability and the character of family neighborhoods. In addition, speculation and absentee ownership were to be discouraged. An owner-occupant requirement was specifically designated as a strategy to minimize the adverse effects of the legislation. There is nothing in the legislative history of the statute suggesting any intent to limit the owner-occupant requirement to the initial applicant. Nor is there anything in the legislative history suggesting any possible motive for such an intentional limitation.

In addition, the issuance of a conditional use permit, based on a requirement related to the owner of the property rather than the use of the property, would violate well-established principles concerning conditional use permits. It is not appropriate to condition the issuance of a conditional use permit on the nature of the applicant, as opposed to the use of the property. Thus, the issuance of a permit may be conditioned on the character of the property as owner-occupied, but not on the character of an applicant as an owner-occupant. The condition of owner-occupied runs with the land and is correctly imposed on all subsequent owners. The Legislature is presumed to be aware of existing law when it enacts new legislation.

Finally, an interpretation of the statute applying the owner-occupant requirement only to the initial applicant, although perhaps reasonable, is not the interpretation most likely to effectuate the purposes of the legislation.

We agree that such an interpretation might provide a marginal increase in the supply of second units, by increasing the number of available purchasers of such properties. This speculative and marginal increase, however, would be created only at the expense of affordability, neighborhood stability and character, and at the cost of increased speculation, and absentee ownership. It is apparent that the Legislature intended its second-unit legislation to not only provide more affordable housing, but also permit homeowners to mitigate the high cost of home mortgages with additional rental income, permit family members to dwell in close proximity, provide additional security, particularly for the elderly, and preserve the character of existing family neighborhoods. All of these goals are furthered by an interpretation of section 65852.2, subdivision (b) permitting a continuous owner-occupant condition. We conclude this is what the Legislature intended.[7]

### DISPOSITION

The order denying the supplemental peremptory writ of mandate petition is affirmed. The City shall recover its costs on appeal.

Godoy Perez, J., concurred.

**TURNER, P. J.,** Dissenting.—This appeal involving two homeowners, Earl Sounhein and Alana Sounhein (hereinafter referred to as the Sounheins), arises out of their application to the City of San Dimas and the City Council of San Dimas (hereinafter collectively referred to as the city) for a permit to build a second residential dwelling unit on their own property. The unit is to be built on the property which the Sounheins occupy. In a prior appeal brought by the city before this court, we affirmed the granting of a peremptory writ of mandate ordering it to vacate an ordinance prohibiting second residential units on any lot in the city. We required the city "to process the Sounheins' application under the standards set forth in [Government Code] section 65852.2, subdivision (b)."[1] (*Sounhein v. City of San Dimas* (1992) 11 Cal.App.4th 1255, 1262 [14 Cal.Rptr.2d 656].) The city processed the Sounheins' application and issued a conditional use permit, in pertinent part, subject to the following conditions: "To maintain use of the second residential dwelling unit, the owner of the subject property shall be the occupant of the primary residence or the second residential dwelling unit. . . . [¶] . . . Upon sale of the property, the subsequent owner shall file an affidavit with the City stating that the owner is an owner occupant. Failure to satisfy this

---

[7]In light of this conclusion we need not address the proper procedure for challenging the owner-occupant conditions or any statute of limitation issues.

[1]Unless otherwise indicated, all future statutory references are to the California Government Code.

condition shall be grounds for revocation of the use permit." The Sounheins filed a motion for a supplemental writ of mandate challenging that condition which the trial court denied. The denial of that supplemental writ of mandate and the validity of the disputed conditions imposed by the city is the subject of this appeal. I believe that the express provisions of section 65882.2, subdivision (b) prohibited the city from imposing the additional requirement that the future buyer of the premises be an owner occupant and hence dissent from my colleagues' analysis.[2]

This appeal involves an issue of statutory construction. The construction and interpretation of a statute is a question of law which is necessarily considered de novo on appeal. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) Our Supreme Court has held: "The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] 'In determining intent, we look first to the language of the statute, giving effect to its "plain meaning." ' [Citations.] Although we may properly rely on extrinsic aids, we should first turn to the words of the statute to determine the intent of the Legislature. [Citation.] Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.]" (*Burden* v. *Snowden, supra,* 2 Cal.4th at p. 562; accord, *Trope* v. *Katz* (1995) 11 Cal.4th 274, 279 [45 Cal.Rptr.2d 241, 902 P.2d 259].)

Section 65852.2 was enacted as a response to the Legislature's declaration that the supply of housing in California was insufficient to meet the demand and the imbalance was likely to become worse. (§ 65852.150[3]; *Wilson* v. *City of Laguna Beach* (1992) 6 Cal.App.4th 543, 545 [7 Cal.Rptr.2d 848].)

[2]The city's contention the Sounheins' exclusive remedy for challenging the condition of approval for their conditional use permit was a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 is without merit. Generally, a city's decision on conditions of use permits is properly challenged by a petition for a writ of administrative mandamus under Code of Civil Procedure section 1094.5. (Cf. *Briggs* v. *City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 644-645 [47 Cal.Rptr.2d 29].) However, if compliance to prior peremptory writ of mandate is not complete then the trial court retains jurisdiction to enforce its prior judgment. (*Stoneham* v. *Rushen* (1984) 156 Cal.App.3d 302, 310 [203 Cal.Rptr. 20]; *King* v. *Woods* (1983) 144 Cal.App.3d 571, 576-577 [192 Cal.Rptr. 724]; Code Civ. Proc., § 1097.) The motion in the present case was a continuation of the previously filed petition. No provision of law prohibits the use of a postwrit motion to compel compliance with a former court order such as occurred in this case.

[3]Section 65852.150 states: "The Legislature finds and declares that second units are a valuable form of housing in California. Second units provide housing for family members,

This statute allows local governments to enact their own ordinances under section 65852.2, subdivision (a), allowing and regulating second units in single family and multifamily zones where they would otherwise be prohibited. In the alternative, if the local governments do not enact such an ordinance, then under section 65852.2, subdivision (b), they must grant a conditional use permit for second units which meet the requirements set forth in that section. (*Ibid.*; see Historical Note, 36C West's Ann. Gov. Code (1983 ed.) § 65852.2, p. 62.) Section 65852.2, subdivision (b)(1) through (b)(3), which are dispositive of the present appeal provides, in pertinent part: "(1) When a local agency which has not adopted an ordinance governing second units in accordance with subdivision (a) or (c) receives its first application on or after July 1, 1983, for a conditional use permit pursuant to this subdivision, the local agency shall accept the application and approve or disapprove the application pursuant to this subdivision unless it adopts an ordinance in accordance with subdivision (a) or (c) within 120 days after receiving the application. Notwithstanding Section 65901, every local agency shall grant a special use or a conditional use permit for the creation of a second unit if the second unit complies with all of the following: [¶] . . . [¶] (2) No other local ordinance, policy, or regulation shall be the basis for the denial of a building permit or a use permit under this subdivision. [¶] (3) This subdivision establishes the maximum standards that local agencies shall use to evaluate proposed second units on lots zoned for residential use which contain an existing single-family dwelling. No additional standards, other than those provided in this subdivision or subdivision (a), shall be utilized or imposed, except that a local agency may require an applicant for a permit issued pursuant to this subdivision to be an owner-occupant."[4]

Looking to the plain meaning of the statute in context, the city was prohibited by section 65852.2, subdivision (b) from imposing the condition

students, the elderly, in-home health care providers, the disabled, and others, at below market prices within existing neighborhoods. Homeowners who create second units benefit from added income, and an increased sense of security. [¶] It is the intent of the Legislature that any second-unit ordinances adopted by local agencies have the effect of providing for the creation of second units and that provisions in these ordinances relating to matters including unit size, parking, fees and other requirements, are not so arbitrary, excessive, or burdensome so as to unreasonably restrict the ability of homeowners to create second units in zones in which they are authorized by local ordinance."

[4]As amended effective January 1, 1995, section 65852.2, subdivision (b) provides, in pertinent part: "(1) When a local agency which has not adopted an ordinance governing second units in accordance with subdivision (a) or (c) receives its first application on or after July 1, 1983, for a conditional use permit pursuant to this subdivision, the local agency shall accept the application and approve or disapprove the application pursuant to this subdivision unless it adopts an ordinance in accordance with subdivision (a) or (c) within 120 days after receiving the application. Notwithstanding Section 65901, every local agency shall grant a special use or a conditional use permit for the creation of a second unit if the second unit complies with all of the following: [¶] (A) The unit is not intended for sale and may be rented. [¶] (B) The lot is zoned for single-family or multifamily use. [¶] (C) The lot contains an existing single-family dwelling. [¶] (D) The second unit is either attached to the existing

which restricted the future use and sale of the property. Section 65852.2, subdivision (b) lists statutorily defined conditions and standards for the second residential unit. However, there is no condition about future owners or real property transfers. Section 65852.2, subdivision (b)(2) specifically prohibits any other local ordinance, policy, or regulation from being used as a basis for denying a use or building permit. Further, section 65852.2, subdivision (b)(3) specifically states the statute sets forth the maximum standards that may be used to evaluate the second units and provides that "[n]o additional standards, other than those provided in this subdivision or subdivision (a), shall be utilized or imposed, except that a local agency may require an applicant for a permit issued pursuant to this subdivision to be an owner-occupant." The fact that the statute provides for no additional standards and then allows one exception evidences the fact the city may not impose further restrictions or expand upon them. (Cf. *Provigo Corp.* v. *Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 565 [28 Cal.Rptr.2d 638, 869 P.2d 1163]; *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903, 921 [221 Cal.Rptr. 575, 710 P.2d 375]; *Desmond* v. *County of Contra Costa* (1993) 21 Cal.App.4th 330, 338-341 [25 Cal.Rptr.2d 842].) Section 65852.2, subdivision (b)(2) states without equivocation "[n]o" other ordinance, policy, or regulation shall be the basis for the denial of a use permit. "No" means no.

---

dwelling and located within the living area of the existing dwelling or detached from the existing dwelling and located on the same lot as the existing dwelling. [¶] (E) The increased floor area of an attached second unit shall not exceed 30 percent of the existing living area. [¶] (F) The total area of floor space for a detached second unit shall not exceed 1,200 square feet. [¶] (G) Requirements relating to height, setback, lot coverage, architectural review, site plan review, fees, charges, and other zoning requirements generally applicable to residential construction in the zone in which the property is located. [¶] (H) Local building code requirements which apply to detached dwellings, as appropriate. [¶] (I) Approval by the local health officer where a private sewage disposal system is being used, if required. [¶] (2) No other local ordinance, policy, or regulation shall be the basis for the denial of a building permit or a use permit under this subdivision. [¶] (3) This subdivision establishes the maximum standards that local agencies shall use to evaluate proposed second units on lots zoned for residential use which contain an existing single-family dwelling. No additional standards, other than those provided in this subdivision or subdivision (a), shall be utilized or imposed, except that a local agency may require an applicant for a permit issued pursuant to this subdivision to be an owner-occupant. [¶] (4) No changes in zoning ordinances or other ordinances or any changes in the general plan shall be required to implement this subdivision. Any local agency may amend its zoning ordinance or general plan to incorporate the policies, procedures, or other provisions applicable to the creation of second units if these provisions are consistent with the limitations of this subdivision. [¶] (5) A second unit which conforms to the requirements of this subdivision shall not be considered to exceed the allowable density for the lot upon which it is located, and shall be deemed to be a residential use which is consistent with the existing general plan and zoning designations for the lot. The second units shall not be considered in the application of any local ordinance, policy, or program to limit residential growth."

Even if there were an ambiguity in the statute itself, a proposition I respectfully reject, the legislative history of section 65852 is as clear as the statutory language—no additional restrictions other than those enumerated by the Legislature may be imposed by a municipality upon homeowners who desire to provide additional housing on their property. Section 65852.2 was adopted in 1982 as section 2 of Senate Bill No. 1534. While pending before the Senate Committee on Local Government, a staff analysis stated: "Senate Bill 1534 would establish the maximum standards to be used to evaluate proposed second residential units. SB 1534 would require that no additional standards could be imposed except locally adopted rent control ordinances or that the applicant for a permit be an owner occupant." (Rep. prepared for Sen. Com. on Local Government on Sen. Bill No. 1534 (Apr. 14, 1982) p. 2.) When the legislation was pending in the Assembly, a report prepared for all of the Assemblypersons stated: "2) Permits local governments to adopt ordinances authorizing the creation of second residential units within or attached to an existing single-family unit. [¶] 3) Requires local governments which do not adopt such ordinances to grant permits for the creation of second residential units which are attached to an existing single-family home if: [¶] a) It meets local building code requirements on home additions. [¶] b) It does not involve an increase of more than 10% in the floor space of the existing dwelling to which it is attached. [¶] c) It is not intended for sale and may be rented. d) It is approved by the local health officer, where a private sewage disposal system is being used, if required. [¶] e) The lot is zoned for single-family or multifamily use. [¶] f) The lot contains an existing single-family detached unit. [¶] g) The second unit is attached to the existing residence and is located within the living area of the existing dwelling. [¶] h) Any construction conforms to, among other things, height, lot coverage, architectural review fee charges, and other zoning requirements generally applicable to residential construction in the zone which the property is located." (Rep. prepared by the Assem. Office of Research for Sen. Bill No. 1534 (Aug. 18, 1982) pp. 1-2.) The foregoing analysis is fully consistent with the statutory language which requires the issuance of a permit under the present circumstances. More critically, after a painstaking review of the entire extensive three-inch thick compilation of materials by the Legislative Intent Service which includes a thorough analysis of every conceivable perspective on Senate Bill No. 1534, I have been unable to find a single sentence which suggests that anybody contemplated section 65852, subdivision (b) granted the power to a municipality to impose the condition at issue here—prohibiting a subsequent buyer of residence from doing what the statute permits, renting one's own property. Hence, not only does the express language of section 65852, subdivision (b) preclude the city from acting as it did but the legislative history warrants a similar conclusion. The supplemental petition should not have been denied on any ground relevant to section 65852.2.

One remaining issue requires a limited remand. Because the trial court concluded section 65852.2 did not prevent the city from interposing the condition which is the subject of the present dispute, there was no resolution of the statute of limitations question presented by section 65907, subdivision (a). There was evidence the Sounheins failed to challenge the city's action on their conditional use permit within the time limitation set forth in section 65907, subdivision (c). There was also evidence before the trial court the city agreed to defer litigation on the conditional use permit contention. These constituted conflicts in the evidence as to the estoppel contention of the Sounheins, a fact-bound determination. (*Platt Pacific, Inc.* v. *Andelson* (1993) 6 Cal.4th 307, 319 [24 Cal.Rptr.2d 597, 862 P.2d 158]; *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129].) Under these circumstances, remand would be appropriate because this court cannot make a factual determination concerning the statute of limitations and estoppel contentions of the parties. (*International Aerial Tramway Corp.* v. *Konrad, Doppelmayr & Sohn* (1969) 70 Cal.2d 400, 406, fn. 6 [74 Cal.Rptr. 908, 450 P.2d 284]; *Yee* v. *Mobilehome Park Rental Review Bd.* (1993) 17 Cal.App.4th 1097, 1109 [23 Cal.Rptr.2d 1]; *Zak* v. *State Farm etc. Ins. Co.* (1965) 232 Cal.App.2d 500, 504-507 [42 Cal.Rptr. 908]; see *City of National City* v. *Wiener* (1992) 3 Cal.4th 832, 850-851 [12 Cal.Rptr.2d 701, 838 P.2d 223] (conc. opn. of Baxter, J.); *Pasadena Medi-Center Associates* v. *Superior Court* (1973) 9 Cal.3d 773, 779-780, fn. 6 [108 Cal.Rptr. 828, 511 P.2d 1180].) I would remand so as to allow the experienced and knowledgeable trial judge to resolve the section 65907, subdivision (a) statute of limitations and estoppel issues.

A petition for a rehearing was denied August 19, 1996.