[No. B217622. Second Dist., Div. Five. June 14, 2010.]

EMBASSY LLC et al., Plaintiffs and Appellants, v.
CITY OF SANTA MONICA et al., Defendants and Respondents.

772

COUNSEL

Allen Matkins Leck Gamble Mallory & Natsis, Anthony J. Oliva and Nancy S. Fong for Plaintiffs and Appellants.

Michaelyn Jones, General Counsel, and Amy J. Regalado, Litigation Attorney, for Defendant and Respondent Santa Monica Rent Control Board.

Marsha Jones Moutrie, City Attorney, and Alan L. Seltzer, Chief Deputy City Attorney, for Defendant and Respondent City of Santa Monica.

OPINION

**ARMSTRONG, J.**—This case arises under the Ellis Act, Government Code section[1] 7060 et seq. The Ellis Act gives landlords "the unfettered right," as outlined in the statute, to remove their residential units from the rental market (*City of Santa Monica v. Yarmark* (1988) 203 Cal.App.3d 153, 165 [249 Cal.Rptr. 732]) and means that cities cannot prevent residential landlords from going out of the landlord business (§ 7060.7).

In this case, a contract between appellants Embassy LLC and PRG Embassy Properties, L.P., and respondents City of Santa Monica and its rent control board (collectively, the City) included appellants' waiver of their Ellis Act rights as to 19 tenant units in their apartment hotel.

Appellants contend, inter alia, that the Ellis Act prohibits the City from enforcing that waiver. We agree, finding that with section 7060.1, the Ellis Act prohibits public entities from enforcing contractual Ellis Act waivers in all circumstances except those specified in the statute. We further find the

---

[1] All further statutory references are to that code unless otherwise indicated.

City was not entitled to prevail on demurrer on either of its alternate grounds of estoppel and statute of limitations.

Facts[2]

Appellants own the Embassy Hotel Apartments (the Embassy) in the City of Santa Monica. Throughout its history, the Embassy has been operated as a hotel apartment housing both tenants and hotel guests.

When the Embassy registered with the rent control board, in 1978, all units were registered as hotel units and apartment units. In 2000, a dispute arose between the City and appellants concerning appellants' alleged failure to pay a transit occupancy tax in connection with people who stayed at the Embassy for fewer than 30 days, and concerning the application of the City's rent control law to the Embassy. The dispute was resolved in October 2000, through a settlement agreement which provided that the 38 units in the Embassy would be separated into two classes. Half the units would be hotel units exempt from the rent control law and half would be apartment units subject to that law. Appellants also agreed to pay the City a sum for the transit occupancy tax, to file transit occupancy tax returns, and to pay that tax in the future.

The settlement agreement included the provision that "Owner hereby waives the right to withdraw the Tenant Units from the rental housing market pursuant to the Ellis Act (CA Gov't Code §§ 7060 et seq.) separate and apart from other units at the Embassy, unless either: (1) such Tenant Units become uninhabitable, or (2) the City adopts a law(s) which confirms that the Tenant Units may be operated as hotel rooms or otherwise occupied by individuals on a daily or weekly basis and not as tenants."[3]

In August 2008, appellants notified the City of their intent to remove the 19 tenant units from the rental housing market. (§ 7060.4.) The City refused to accept the filing, citing the Ellis Act waiver in the settlement agreement.

---

[2] On review of a demurrer granted without leave to amend, we treat the demurrer as admitting all material facts properly pleaded. (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638 [29 Cal.Rptr.2d 152, 871 P.2d 204].)

[3] The City has asked for judicial notice (*Moore v. Conliffe, supra*, 7 Cal.4th at p. 638) of the settlement agreement, the minutes of the rent control board's December 7, 2000 meeting, which in the City's words demonstrates "that the settlement agreement was approved and implemented in a quasi-administrative proceeding," and the board's notice of approval of hotel exemption for the Embassy. As to the settlement agreement, the City moved for judicial notice in the trial court, a motion which was denied on the ground that the agreement was not properly the subject of judicial notice. We agree with the trial court and deny the request here as well. (Evid. Code, §§ 451, 452.) As to the other documents, the City requested notice in the trial court only in a footnote in a reply brief. For that reason, and because we do not see that the documents are relevant, we deny the request.

Appellants filed a petition for writ of mandate and complaint for declaratory relief, seeking an order compelling the City to permit the removal of the units from the rental housing market and a declaration that the Ellis Act waiver was unenforceable.

The trial court sustained the City's demurrer without leave to amend on the ground that appellants had waived their Ellis Act rights, finding that the Ellis Act did not bar enforcement of the waiver.

Discussion

1. *The Ellis Act Waiver*

The Ellis Act was the Legislature's response to *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894]. In that case, the California Supreme Court reviewed a section of the City's charter which required landlords to obtain a permit from the rent control board before removing rental units from the housing market—a permit which the landlord could only get by showing that rental use would not earn a fair return on investment, and that removal would not displace low- or moderate-income persons, and that removal would not adversely affect the City's supply of housing. The California Supreme Court found the ordinance constitutional. (*Id.* at p. 101; *Drouet v. Superior Court* (2003) 31 Cal.4th 583, 590 [3 Cal.Rptr.3d 205, 73 P.3d 1185].)

With the Ellis Act, the Legislature intended "to supersede any holding or portion of any holding in [*Nash*] to the extent that the holding, or portion of the holding, conflicts with this chapter, so as to permit landlords to go out of business." (§ 7060.7.)

The central prohibition of the Ellis Act is in section 7060, which provides that "No public entity . . . shall, by statute, ordinance, or regulation, or by administrative action implementing any statute, ordinance or regulation, compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease . . . ." (§ 7060, subd. (a).)

Appellants contend that the City's approval of the settlement agreement here was an administrative action implementing the City's zoning, permitting, and rent control laws, that the action compelled them "to continue to offer, accommodations in the property for rent or lease" (§ 7060, subd. (a)), and that the Ellis Act prohibitions apply. We agree.

The issue is one of statutory interpretation, and our review is de novo. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d

672].) To interpret a statute, we give the words their plain and commonsense meaning. If the statutory language is clear and unambiguous our inquiry ends. The plain meaning of the statute governs. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].)

■ The Ellis Act plainly states that section 7060 applies to a public entity's contracts. In section 7060.1, the Ellis Act provides that "Notwithstanding Section 7060, nothing in this chapter does any of the following: [¶] (a) Prevents a public entity from enforcing any contract or agreement by which an owner of residential real property has agreed to offer the accommodations for rent or lease in consideration for a direct financial contribution or, with respect to written contracts or agreements entered into prior to July 1, 1986, for any consideration." (The Ellis Act had an operative date of July 1, 1986.)

■ Thus, section 7060.1 provides that notwithstanding section 7060's prohibition on public entity acts compelling a residential landlord to stay in the residential landlord business, a public entity may enter into and enforce certain contracts which compel a residential landlord to do just that. Section 7060.1 tells us that section 7060's prohibition extends to contracts. If it did not, section 7060.1's exemption for certain contracts would not be necessary. By providing that Ellis Act waivers may be enforced in some contracts, section 7060.1 tells us that they may not be enforced in other contracts.[4]

■ "It is a cardinal rule of statutory construction that in attempting to ascertain the legislative intention, effect should be given as often as possible to the statute as a whole and to every word and clause, thereby leaving no part of the provision useless or deprived of meaning." (*Pham v. Workers' Comp. Appeals Bd.* (2000) 78 Cal.App.4th 626, 634 [93 Cal.Rptr.2d 115]; see also *Reidy v. City and County of San Francisco* (2004) 123 Cal.App.4th 580, 592–593 [19 Cal.Rptr.3d 894] [by expressly excepting certain residential hotels from the Ellis Act, the Legislature plainly manifested that it intended the right to apply to all residential rental property].)

■ This is, moreover, the sensible reading which comports with the stated legislative purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Under this reading, public entities, at least some of which have been unenthusiastic about the Ellis Act, cannot avoid its prohibitions by acting through contract, rather than through regulation. As appellants argued in the

---

[4] We do not understand the City to argue that appellants received a direct financial contribution. At least, they did not do so on demurrer.

trial court, another reading would, for instance, allow a public agency to condition issuance of a necessary permit on a contract which included an Ellis Act waiver, thus avoiding the Act.

The City cites the legislative history of section 7060.1, and argues that the history indicates a concern that the Ellis Act would prevent a city from enforcing agreements in which a developer agreed to provide low- or moderate-income housing for a period of time in exchange for city incentives or concessions. From this, the City concludes that section 7060.1 only clarifies that a public entity may enforce certain affordable housing agreements.

We agree that section 7060.1 clarifies section 7060, but not as the City would have it. The Legislature did not draft either section 7060 or section 7060.1 to include the limits the City suggests. Instead, the legislative history the City cites indicates that without section 7060.1, section 7060 would prevent the City from enforcing contracts that include Ellis Act waivers, even if those contracts involved developers and affordable housing. In other words, the legislative history establishes that section 7060 applies to public entity contracts.

The City also cites other provisions of the Ellis Act, which allow public entities some powers to regulate. Certainly, "[t]he right articulated in the Act . . . is expressly made subject to certain other laws. For example, the Act is not intended to interfere with local authority over land use, including regulation of the conversion to condominiums or nonresidential use ([§] 7060.7, subd. (a)), or to preempt local environmental or land use regulations governing the demolition or redevelopment of the property ([§ 7060.7], subd. (b)). Nor does the Act permit a landlord to withdraw from rent or lease less than all of the accommodations in a building. ([§ 7060.7], subd. (d).)" (*Drouet v. Superior Court, supra*, 31 Cal.4th at p. 590.) However, we see nothing in the fact that some powers are specifically allowed to cities which means that cities have other powers (such as the power to enforce this contract) which are not specifically allowed to them.

Nor are we persuaded by the City's citation to other statutes in which waiver is specifically prohibited, and the City's accompanying argument that waiver is not specifically prohibited in the Ellis Act and is thus allowed. As we have seen, the Ellis Act provides that a contractual waiver is unenforceable. Other statutes may do so in different terms or through different methods, but that is of no moment.

## 2. *Estoppel, Judicial Estoppel, and Statute of Limitations*

The City's demurrer also raised these defenses, and the City raises them again on appeal. We do not see that the City is entitled to prevail on any of them.

■ Judicial estoppel applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183 [70 Cal.Rptr.2d 96].) The City argues that its approval of the settlement agreement constituted an administrative action.[5]

The City's estoppel argument is based on the assertion that this case is governed by the rule that "a landowner or his successor in title is barred from challenging a condition imposed upon the granting of a special permit if he has acquiesced therein by either specifically agreeing to the condition or failing to challenge its validity, and accepted the benefits afforded by the permit." (*County of Imperial v. McDougal* (1977) 19 Cal.3d 505, 510–511 [138 Cal.Rptr. 472, 564 P.2d 14].)

We cannot see that the doctrine of judicial estoppel is applicable. There was no tribunal to adopt a position or accept it as true, and the doctrine simply makes no sense in this circumstance. Nor do we see that *County of Imperial v. McDougal* applies here—where there is no special permit—and the City does not explain why it would. To prove estoppel, the City would have to prove all the ordinary elements of estoppel. (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901 [28 Cal.Rptr.3d 894].)

■ Moreover, as appellants argue, the defense of estoppel "is not available where the contract is illegal. (*American National Bank* v. *A. G. Sommerville, Inc.* (1923) 191 Cal. 364 [216 P. 376].)" (*Waters v. San Dimas Ready Mix Concrete* (1963) 222 Cal.App.2d 380, 383 [35 Cal.Rptr. 215].)

As to the statute of limitations, the City argues that the action is barred by the four-year statute applicable to an action on a contract (Code Civ. Proc., § 337) and by the four-year statute applicable to actions against public entities. (Code Civ. Proc., § 343; *Barlow v. City Council of Inglewood* (1948) 32 Cal.2d 688, 697 [197 P.2d 721].)

---

[5] Appellants are happy to accept that position, and to argue that the City elsewhere take a different position.

■ We agree with appellants that neither statute bars this action. First, this is not an action on a contract. It is a mandamus action. In such a proceeding, the limitation begins to run "when the cause of action first accrues." (*Valvo v. University of Southern California* (1977) 67 Cal.App.3d 887, 894 [136 Cal.Rptr. 865].) Here, there could have been no mandamus proceeding, and no cause of action, until appellants sought to remove their tenant units from the rental market, and the City refused to accept the Ellis Act filing. The statute of limitations does not bar this action.

### Disposition

The judgment is reversed. Appellants to recover costs on appeal.

Turner, P. J., and Kriegler, J., concurred.

A petition for a rehearing was denied July 9, 2010, and respondents' petition for review by the Supreme Court was denied September 1, 2010, S184765. Werdegar, J., was of the opinion that the petition should be granted.